JAMES EVANS *et al.*, Plaintiffs-Appellants, v. SISTERS OF THE THIRD ORDER OF ST. FRANCIS *et al.*, Defendants-Appellees.

Third District   No. 3—86—0204

Opinion filed March 27, 1987.—Rehearing denied May 4, 1987.

Jay H. Janssen and Jerelyn D. Maher, both of Peoria, for appellant James Evans.

Paul C. Estes, of Thomas & Hinshaw, Culbertson, of Peoria, and E. Michael Kelly and Joshua G. Vincent, both of Thomas & Hinshaw, Culbertson, of Chicago, for appellees.

JUSTICE STOUDER delivered the opinion of the court:

Plaintiffs, James and Claria Evans, appeal from a judgment of the Circuit Court of Peoria County in favor of defendants, Sisters of the Third Order of St. Francis (the hospital) and Dr. Ahmed Ksaibati. The action arose out of the allegedly negligent treatment which left James Evans a quadriplegic.

There was substantial disagreement as to whether Dr. Ksaibati's treatment was negligent and whether Mr. Evans' condition was aggravated by the alleged negligent treatment of Dr. Ksaibati. Even the experts were in considerable disagreement as to what the X rays, taken both before and after the treatment, showed concerning Mr. Evans'

condition. With this preface, we will also examine the facts in existence prior to the treatment because the defendants contend that Mr. Evans' condition was a natural consequence of his previous medical condition and history.

James Evans first began feeling numbness and weakness in his extremities in 1973 while employed for Chrysler in Detroit. Chrysler referred Evans to a Detroit neurologist, but the condition persisted, culminating in Evans' leaving Chrysler because of a medical disability and moving back to Peoria in 1974 or 1975. Evans secured seasonal employment as a heavy-equipment operator although he was limited to jobs which only required the use of one hand. The numbness and weakness progressed and by the fall of 1978 he had ceased working altogether.

Evans sought treatment from a Peoria neurologist who admitted Evans for a series of tests. Those tests revealed that Evans had either a cyst or tumor on his spinal column. The neurologist referred Evans to a neurosurgeon since the extent of the problem could not be determined without surgery. The surgeon performed surgery to remove the tumor which had infiltrated and pierced the spinal cord in one area. Afterwards, the surgeon prescribed a course of radiation therapy to prevent regrowth of any portion of the tumor which he was unable to remove.

After the surgery, Evans' condition worsened although he was still able to move his arms and walk. During that time period, Evans applied for and obtained total disability benefits from the Social Security Administration and the Illinois Department of Rehabilitation. By April 1982, Evans' condition continued to worsen and he discontinued physical therapy sessions when told he was not responding. The surgeon who had performed the spinal surgery examined Evans again in 1982, noting pronounced spasticity in both arms and a difficulty in the balance in his legs.

On the evening of July 23, 1983, Evans fell while attempting to walk to his kitchen and struck his head, resulting in a two-inch laceration on his forehead. He lay on the floor unable to move for approximately 30 minutes. The four expert witnesses testifying at trial commented on the severity of Evans' paralysis based, in part, on the fact that he was unable to roll himself over after the fall. Evans was taken to the hospital where he was examined by Dr. Ksaibati, who noted his prior surgical and medical history as well as his level of consciousness and physical condition at the time of admittance. Dr. Ksaibati conducted a neurological exam and checked Evans' tendon reflexes.

Evans' wife requested that Dr. Ksaibati take X rays and admit

Evans for observation, but the doctor said it was unnecessary and released him. Evans awoke the next morning unable to move and he was taken to the hospital for testing. Evans was admitted and placed in traction. Evans remained in the hospital for more than a month.

The Evans' eight-count complaint alleged medical malpractice against Dr. Ksaibati and the hospital. The jury trial resulted in a judgment for the defendants. The plaintiffs' post-trial motion was denied, and this appeal followed.

The plaintiffs raise the following issues on appeal: (1) that the denial of plaintiffs' motion *in limine* permitted evidence to go to the jury concerning the fact that Mr. Evans was considered totally disabled by the Social Security Administration and the Illinois Department of Rehabilitation prior to the injury and treatment which allegedly rendered him a quadriplegic, (2) that the trial court erroneously interpreted Supreme Court Rule 220 (103 Ill. 2d R. 220) by disallowing plaintiff's expert to testify to the present condition of the plaintiff based upon a physical examination performed the day of trial, (3) that the trial court erroneously denied plaintiff's cross-examination of the defendant about certain medical records concerning facts of subsequent medical findings and treatment, and (4) that the determination by the jury was contrary to the manifest weight of the evidence.

■ The first issue we address is plaintiffs' sufficiency-of-the-evidence argument. The appellate court is not free to reweigh the evidence or to assess the credibility of the testimony and set aside the jury's determination merely because a different conclusion could have been drawn from the evidence. (*McMahon v. Richard Gorazd, Inc.* (1985), 135 Ill. App. 3d 211, 481 N.E.2d 787.) Suffice it to say on this appeal that plaintiffs have primarily directed our attention to evidence supporting his position, neglecting in large measure any evidence relating to the opposing arguments. We have already noted the contradictory nature of the evidence and the disagreement among the experts. In this case, we will not attempt to impose our judgment over that of the jury. They were present to view the witnesses' demeanor while testifying and were in a much better position to assess their credibility.

■ We next address the propriety of the trial court's actions in denying plaintiffs' motion *in limine*. The plaintiffs' motion requested that the following facts be excluded from evidence:

"1. The fact that James Evans had been considered "disabled" for purposes of benefits under the Social Security Act,

2. The fact that James Evans has received disability benefits pursuant to the Social Security Act, [and]

3. The fact that James Evans has and the possible future

availability of charitable and free governmental services for handicapped individuals."

The court denied the plaintiffs' motion as to paragraphs one and two and stated that the defendant must prove availability of services without speculation before any evidence as to paragraph three could reach the jury. Our inquiry will focus on the first aspect of the motion *in limine, i.e.,* the plaintiff's concern that information regarding the Social Security Administration's determination that Mr. Evans was already totally disabled not reach the jury.

It should be noted that the use of motions *in limine* is to be encouraged so as to reduce trial errors resulting in mistrials, new trials, and reversals. (*People v. Devine* (1977), 55 Ill. App. 3d 576, 580, 371 N.E.2d 22.) The trial court's inherent power to admit or exclude evidence is sufficient to permit the use of the motion *in limine,* and in ruling on the motion the threshold question is whether the rules of evidence require exclusion of the subject matter of the motion. If they do not, then the motion must be denied. *People v. Williams* (1978), 60 Ill. App. 3d 529, 377 N.E.2d 367.

On appeal, plaintiffs assert that the defendants used the "determinations" of the Illinois Department of Rehabilitation and the Social Security Administration to prove that Mr. Evans was totally disabled prior to the treatment rendered by Dr. Ksaibati. The plaintiffs assert that this deprived the jury of the opportunity to make its own determination of the extent of the prior disability and violated the collateral-source rule. On the other hand, defendants assert that the statements from the application for benefits that Mr. Evans was totally disabled were admissible on the basis that they were admissions by a party opponent and admissible as substantive evidence because they were inconsistent with plaintiffs' position during the litigation. The defendants allege that prior to trial, Mr. Evans represented himself as totally disabled to the government agencies for the purposes of receiving benefits; however, at trial, he took the position that he was only partially disabled before his fall and subsequent treatment.

This issue arises from the following lines of questioning employed by the defendants' attorney during cross-examination. In an exchange with Mrs. Evans the following questions and answers were recorded:

"Q. In fact, in terms of Social Security, he is totally disabled, isn't that true?

A. Right now he is totally disabled.

Q. And in terms of the State of Illinois and the Department of Rehabilitation, he is totally disabled, isn't that true?

A. Yes."

The cross-examination of Mr. Evans was similar:

"Q. But you have been placed on full disability by Social Security, isn't that true?

A. As of 3 years ago.

Q. And, in addition, you have been considered fully disabled by the State of Illinois Department of Rehabilitation, isn't that true?"

The defendant again introduced these agency determinations in cross-examining the plaintiffs' expert witnesses. The following exchanges took place between defendants' attorney and the experts:

"Q. [to the first expert witness]: And you were aware that Social Security had determined Mr. Evans to be completely disabled?

A. That's right.

Q. And the State of Illinois Department of Rehabilitation had considered Mr. Evans completely disabled?"

And:

"Q. [to the second expert witness]: And you have no quarrel at all with the fact that Mr. Evans has been on Social Security, full disability since that time?

A. Yes, sir.

Q. You agree with that?

A. I agree with that.

Q. And you agree that Mr. Evans with his being on full disability from the State of Illinois Department of Rehabilitation from the same neurological deterioration, correct?

A. Yes, sir."

■ Generally, any statement made by a party or in his behalf which is inconsistent to his position in litigation may be introduced against him. In support of this position, defendants cite the cases of *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769, and *Quincy Trading Post, Inc. v. Department of Revenue* (1973), 12 Ill. App. 3d 725, 298 N.E.2d 789. This proposition does not lose its impact when applied to the facts of this case; however, an examination of the colloquy between the defendants' attorney and the witnesses being questioned leads us to the conclusion that the defendant's attorney exceeded the bounds of questioning these witnesses regarding Mr. Evans' alleged admissions. Nothing in the questioning of these four witnesses relates in any manner to any admissions, alleged or otherwise, which Mr. Evans may have made on his applications for benefits. Instead, the defendants' attorney sought to introduce the administrative agencies' determinations that Mr. Evans was totally disabled in an attempt to sway the jury.

The plaintiffs contend that the use of this evidence is violative of the collateral-source rule, citing *Cargnino v. Smith* (1973), 17 Ill. App. 3d 831, 308 N.E.2d 853. *Cargnino* dealt with a pedestrian injured as a result of being struck by a motorist. During the course of the trial, the motorist introduced evidence that the pedestrian had applied for and received social security disability benefits for emphysema and temporary total disability benefits for black lung disease. The pedestrian claimed this evidence was erroneously admitted under the collateral-source rule and the defendant countered the argument by contending that the evidence was proper to establish that the pedestrian was already totally disabled due to preexisting conditions. Although factually distinguishable, the holding in *Cargnino* is applicable in this case. The *Cargnino* court stated:

"[W]hat governmental agencies felt about plaintiff's disabilities from emphysema and black lung disease has no bearing on plaintiff's disability caused by the accident. *** Thus, testimony of black lung and social security benefits was improper under the collateral source rule. [Citations.] On retrial such testimony should not be permitted. We do not mean to suggest that evidence of plaintiff's prior physical condition, including black lung disease and emphysema, is to be excluded. However, plaintiff's prior physical condition can be established without any reference to governmental agencies' standards for disabilities from unrelated causes or any reference to benefits which such agencies disburse." 17 Ill. App. 3d 831, 834-35, 308 N.E.2d 856.

There is no doubt that the defendants sought to introduce the agency determination of total disability rather than, as they assert, the admissions made by Mr. Evans in applying for benefits from these agencies. Although Mr. Evans' condition after the treatment is more closely related to his condition prior to treatment, as opposed to the two distinct injuries in *Cargnino*, the fact remains that an agency's determination of total disability has no bearing on Mr. Evans' physical condition before or after the treatment. The problem arises because a determination of total disability by these agencies does not necessarily indicate a total loss of all bodily movement and control. (See *Thomas J. Douglass & Co. v. Industrial Com.* (1966), 35 Ill. 2d 100, 219 N.E.2d 486 (total permanent disability determination due to neurosis resulting from injury to and amputation of two toes).) In this case, Evans could not be expected to explain how an agency determines whether a claimant is totally disabled. Therefore, we hold this line of questioning to be improper and the type which could have been prevented by granting

the plaintiff's motion *in limine*. Since Mr. Evans' condition prior to Dr. Ksaibati's treatment was a vigorously contested issue, we believe the frequent reference to the agencies' determinations deprived the plaintiffs of a fair trial and constituted reversible error.

Because we have determined that this error warrants the granting of a new trial, and the likelihood that the other errors complained of will not reoccur upon retrial, there is no need to address them at length further on this appeal.

For the foregoing reasons the judgment of the circuit court of Peoria County is reversed and this cause is remanded for a new trial.

Reversed and remanded.

BARRY, P.J., and HEIPLE, J., concur.