(No. 64589.—

*In re* MARRIAGE OF CAROL LEE ECKERT, Appellee, and MARK WILLIAM ECKERT, Appellant.

*Opinion filed January 19, 1988.*

318

SIMON, J., took no part.

Steven E. Katzman, of Katzman & Associates, of Belleville, for appellant.

Phillip A. Montalvo, of McRoberts, Sheppard, Wimmer & Stiehl, P.C., of Belleville, for appellee.

JUSTICE RYAN delivered the opinion of the court:

The custodial parent, Carol Eckert, petitioned the trial court for leave to remove the parties' son, Matthew, from the State of Illinois to Arizona. The trial court denied the petition for removal, because the court found the best interests of the child would be served by his continued residence in Illinois near his father and extended family, including all of his surviving grandparents. The petitioner appealed from that judgment, and the appellate court concluded that the trial court's denial of the petition was against the manifest weight of the evidence and that the best interests of the minor would be served by allowing removal to Arizona. (148 Ill. App. 3d 512.) We granted respondent Mark Eckert's petition for leave to appeal. 107 Ill. 2d R. 315.

Carol and Mark Eckert were married on June 30, 1976. The parties' marriage was dissolved on December 18, 1983; custody of the parties' minor son, Matthew (seven years old at the time of the instant petition), was awarded to Carol, subject to rather extensive visitation rights for Mark. The petitioner has another son from her

first marriage, Bernie Plassmayer, who has asthma. On May 23, 1985, Carol filed a petition for leave to remove Matthew from Illinois to Yuma, Arizona. The petition for removal was based upon two grounds: (1) advancement of Carol's career both professionally and economically, and (2) improvement of Bernie's (her son from a previous marriage) health. Mark objected to the removal and asserted that Carol's interest in moving to Yuma was self-motivated and not in the best interests of the child, Matthew. Additionally, Mark asserted that the proposed move would cause grave psychological trauma for Matthew and would irrevocably injure the close parent-child relationship between father and son.

Mark Eckert filed a petition for the appointment of a court-ordered psychological evaluation of the parties and the minor child in order to ascertain whether the proposed move was in the best interests of Matthew. The petitioner, Carol Eckert, objected to the petition for psychological evaluation and alternatively argued that the trial court should order Mark Eckert to authorize the release of all information obtained by Dr. Tom Evans. Dr. Evans is a psychologist that extensively counseled the couple and allegedly had information which would aid the trial court in determining the best interests of Matthew. The trial court granted Mark Eckert's petition for psychological evaluation of the parties and their minor son. The trial court appointed Dr. Daniel J. Cuneo, who frequently serves the St. Clair County circuit court as a court-appointed psychologist. Petitioner, Carol Eckert, on appeal asserted that the trial court erred in denying the release of any and all information Dr. Evans may have had regarding the best interests of Matthew. No offer of proof was made by Carol Eckert that would indicate what information Dr. Evans had regarding the bests interests of Matthew.

At the time of the hearing on the petition for removal, Carol was teaching nursing at East St. Louis State Community College. She had been offered a teaching position at the Junior College of Yuma, Arizona. The associate degree nursing program at the Junior College of Yuma is fully accredited, whereas the program at East St. Louis State Community College is unaccredited. Carol testified that the pay scale for the job in Yuma ranged from $19,000 to $23,000, and that her salary was $21,350 at East St. Louis State Community College. Carol further testified that she had been looking for a position in the Belleville area through the newspapers, without success. On cross-examination, however, Carol admitted that she "wasn't really looking" for work and that she had just been offered the job in Yuma.

The second reason Carol gave for her desire to move to Arizona was Bernie's (her son from a previous marriage) asthmatic condition. Carol Eckert's father, Dr. William Knaus, testified that the climate of Belleville, Illinois, is unfavorable to asthmatics. Carol also presented evidence that the quality of life for the children would be at least equal to that offered in Belleville, because their housing, schooling and activities would be comparable, and possibly enhanced, by an improved climate. Carol had previously lived in Yuma and therefore is familiar with the living and environmental conditions there. Additionally, evidence was introduced that Carol was dating a physician in Yuma with some talk of marriage, but no definite plans.

All the evidence introduced indicated that Matthew is well adjusted and that both mother and father are excellent, loving parents. Although each party attempted to disparage, to a degree, the custody circumstances of the other, the record reflects that Matthew has developed a strong attachment for his father, as well as for his mother. The court-appointed psychologist, Dr. Cuneo,

evaluated the parties and minor child and concluded that Matthew's best interest would be served by remaining in the Belleville area. Dr. Cuneo stated:

"Mr. Eckert has an excellent relationship with his son, one of the best I've seen. He is involved in all aspects of his son's life. As the result of Mr. Eckert's love, concern, and time spent with his son, Matt has an excellent relationship with his father. This relationship has been very beneficial to Matt. It has been one of the contributing factors to Matt's well adjustment."

Mark Eckert is employed as a funeral home attendant, ambulance driver, and emergency medical technician. Mark's work schedule varies; nevertheless, he has never missed a visitation with his son. Several witnesses testified that Mark is an exceptional parent and that he spends a great deal of quality time with Matthew. Moreover, there was considerable testimony that Carol had attempted to interfere with Mark's visitation rights. Specifically, Karen Neimann testified that when she baby-sat for Matthew during the summer of 1982, the petitioner, Carol Eckert, told her Matthew was not allowed to call his paternal grandmother, who lived a few blocks away. Similarly, Matthew's first-grade teacher, Annie Mae Banes, testified that she allowed parents to go on field trips. According to Banes, she gave Mark Eckert permission to go on the field trip, not knowing the family situation. When she found out, she told Carol Eckert she could go on the next field trip. Banes testified that Carol Eckert told her "she was going to keep him [Matthew] home and he was going to be sick."

In the order denying the petition to remove, the trial court concluded that Carol had not sought employment in the St. Louis area, there was no evidence introduced on how the move to Yuma would improve Bernie's asthma, respondent has an exceptional relationship with his son and spends a great deal of quality time with him,

the father's relationship with Matt is important at his age, the move would substantially reduce their time together, and finances would prohibit more than an occasional visit. The trial court concluded that: "A move to Yuma (disregarding the effect of a diminishment of visitation and contacts with the minor's extended family) would be neutral ***. When this exceptional relationship [between Matt and his father], in a nurturing environment, is viewed against a neutral effect of a move to Yuma, the child's best interests are favored by a continuation of the present situation."

The appellate court, with one justice dissenting, reversed the trial court and held that denial of the petition for removal was against the manifest weight of the evidence. The appellate court stated that a petition for removal should be granted "unless rather strong negative circumstances militate against it." (148 Ill. App. 3d 512, 515-16.) Additionally, the appellate court noted that "[d]ilution of rights of visitation have not constituted such negative factors that will prohibit removal."

The appellate court relied on the standard set out in *In re Marriage of Burgham* (1980), 86 Ill. App. 3d 341, to determine if a court should grant a petition for removal:

"[T]he petitioning spouse has the burden of proof. *However, a prima facie showing is made when a proper custodian states a desire to remove, shows a sensible reason for the move, and makes at least a superficial showing that the move is consistent with the child's best interests.* As a child often receives little, if any, demonstrable benefit from moving, direct benefit need not be shown. A different rule would unnecessarily tie many custodial spouses to this State. As proof that the child would not be harmed by the move involves proof of a negative, the petitioning spouse need not negate all possibilities of harm to the child. An objecting party could, of course, introduce evidence of specific damage likely to be incurred by

the child. If the noncustodial spouse has rights of visitation, the trial court must give consideration to these rights and, with rare exceptions, should not allow removal if it would prevent reasonable visitation by the noncustodial spouse. The trial court must then weigh all of these items of evidence in arriving at its conclusion." (Emphasis added.) (86 Ill. App. 3d at 345-46.)

The appellate court found that the trial court's decision was against the manifest weight of the evidence because: (1) Carol had a plausible reason for the move; (2) Carol's two sons had a strong attachment to each other and would remain together; (3) Carol had been dating a physician in Yuma with some talk of marriage; and (4) the only detriment Mark could establish was the diminution of visitation. 148 Ill. App. 3d 512.

Mark asserts that the appellate court's decision renders the best interests of the child requirement of section 609 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 609) meaningless because the removing parent can offer any reason for wanting to leave the State and the petition will be granted. We agree with the respondent and reverse the judgment of the appellate court and reinstate the order of the trial court.

Section 609 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 609) provides:

"The court may grant leave, before or after judgment, to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of such child or children. *The burden of proving that such removal is in the best interests of such child or children is on the party seeking the removal.* When such removal is permitted, the court may require the party removing such child or children from Illinois to give reasonable security guaranteeing the return of such children." (Emphasis added.)

In removal cases the paramount question is whether the move is in the best interests of the child. (*Quirin v. Quirin* (1977), 50 Ill. App. 3d 785, 788.) Because of the children's interest in maintaining significant contact with both parents following the divorce, it has been held that the mere desire of the custodial parent to move to another State, without more, is insufficient to show that the move would be in the children's best interest. (See *Reddig v. Reddig* (1973), 12 Ill. App. 3d 1009, 1011; see also Ill. Rev. Stat. 1985, ch. 40, par. 102(7).) Moreover, it is clear from the italicized language of section 609 quoted above that the burden of proof is on the party seeking judicial approval of the proposed removal to establish that the move is in the children's best interest. (*Quirin*, 50 Ill. App. 3d 785.) The italicized language was added to section 609 by amendment effective January 1, 1982, to clarify the question as to which party will bear the burden of proof in removal proceedings. Prior to the amendment, this question had not been uniformly decided by case law. See Ill. Ann. Stat., ch. 40, par. 609, Supplement to Historical & Practice Notes, at 50 (Smith-Hurd 1987 Supp.).

In determining whether the petitioner has met the burden of proof, analysis should initially focus on the best interests of the children. Determining what is in the best interests of children requires an evaluation of numerous factors. (See *D'Onofrio v. D'Onofrio* (1976), 144 N.J. Super. 200, 365 A.2d 27.) The appellate majority, however, held that its reading of case law regarding the burden of proof to be borne by the parent seeking removal of a minor child indicated a trend which would permit removal unless rather strong negative circumstances indicated against it. The appellate majority found that a *prima facie* showing is made when a proper custodian states a desire to remove, shows a sensible

reason for the move, and makes at least a superficial showing that the move is consistent with the child's best interest. (See also *In re Marriage of Burgham* (1980), 86 Ill. App. 3d 341, 345-46.) Furthermore, it was noted that a child rarely receives any demonstrable benefit from moving, and therefore the petitioning spouse need not show a direct benefit. Accordingly, the appellate court found that the petitioner had made a *prima facie* showing, and that the father failed to establish that the child would suffer specific harm from the move and therefore the petition for removal should have been granted.

We disagree. The appellate majority's standard is contrary to the express language of section 609 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 609), which states that "the burden of proving that such removal is in the best interests of such child or children is on the party seeking the removal." The test set out by the appellate majority dilutes the burden of proof which the legislature has placed on the custodial parent in the statute governing removal of children from this State. Ill. Rev. Stat. 1985, ch. 40, par. 609.

In deciding whether removal is in the child's best interest, a trial court should hear any and all relevant evidence. (*Cooper v. Cooper* (1984), 99 N.J. 42, 76-77, 491 A.2d 606, 624 (Schreiber, J., concurring).) A determination of the best interests of the child cannot be reduced to a simple bright-line test, but rather must be made on a case-by-case basis, depending, to a great extent, upon the circumstances of each case. (See, *e.g., Dozier v. Dozier* (1959), 167 Cal. App. 2d 714, 334 P.2d 957; *Hale v. Hale* (1981), 12 Mass. App. Ct. 812, 429 N.E. 2d 340.) There are, however, several factors which may aid a trial court in determining the best interests of the child. The court should consider the proposed move in terms of likelihood for enhancing the general quality of life for

both the custodial parent and the children. (*Gallagher v. Gallagher* (1978), 60 Ill. App. 3d 26, 31; *D'Onofrio v. D'Onofrio* (1976), 144 N.J. Super. 200, 205-07, 365 A.2d 27, 30.) The court should also consider the motives of the custodial parent in seeking the move to determine whether the removal is merely a ruse intended to defeat or frustrate visitation. (See *Winebright v. Winebright* (1987), 155 Ill. App. 3d 722, 725; *In re Custody of Arquilla* (1980), 85 Ill. App. 3d 1090, 1093.) Similarly, the court should consider the motives of the noncustodial parent in resisting the removal. (*D'Onofrio*, 144 N.J. Super. at 206-07, 365 A.2d at 30.) It is also in the best interests of a child to have a healthy and close relationship with both parents, as well as other family members. Therefore, the visitation rights of the noncustodial parent should be carefully considered. (*In re Marriage of Brady* (1983), 115 Ill. App. 3d 521, 523; *In re Marriage of Burgham* (1980), 86 Ill. App. 3d 341, 346.) Another factor is whether, in a given case, a realistic and reasonable visitation schedule can be reached if the move is allowed. *In re Custody of Anderson* (1986), 145 Ill. App. 3d 746.

A reasonable visitation schedule is one that will preserve and foster the child's relationship with the noncustodial parent. When a parent has assiduously exercised his or her visitation rights, "a court should be loath to interfere with it by permitting removal of the children for frivolous or unpersuasive or inadequate reasons." (*D'Onofrio*, 144 N.J. Super. at 206, 467 A.2d at 30, citing *Grove v. Grove* (1953), 26 N.J. Super. 154, 97 A.2d 505.) However, if the best interests of the children would not be affected by a move to another State, the custodial parent should be free to move. Thus, if the noncustodial parent objects to the removal but has not exercised his or her visitation rights, this fact should be considered in determining whether to grant the custodial parent's de-

sire to move. *Cooper v. Cooper* (1984), 99 N.J. 42, 70, 491 A.2d 606, 620 (Schreiber, J., concurring).

When removal to a distant jurisdiction will substantially impair the noncustodial parent's involvement with the child, the trial court should examine the potential harm to the child which may result from the move. (*E.g., In re Marriage of Bednar* (1986), 146 Ill. App. 3d 704, 711; *In re Marriage of Burgham* (1980), 86 Ill. App. 3d 341, 346.) Moreover, a trial court's examination of a removal petition should be guided by the policy of the Illinois Marriage and Dissolution of Marriage Act in custody matters, which states, *inter alia*, that the purpose of the Act is to "secure the maximum involvement and cooperation of both parents regarding the physical, mental, moral and emotional well-being of the children during and after the litigation." (Ill. Rev. Stat. 1986, ch. 40, par. 102(7); see also *In re Marriage of Bednar* (1986), 146 Ill. App. 3d 704, 711.) If the custodial parent, however, establishes a good, sincere reason for wanting to move to another jurisdiction, the trial court should consider all the relevant factors in determining the best interest of the child. (*Yannas v. Frondistou-Yannas* (1985), 395 Mass. 704, 711-12, 481 N.E.2d 1153, 1158.) A trial court's determination of what is in the best interests of the child should not be reversed unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred. *Quirin v. Quirin* (1977), 50 Ill. App. 3d 785; *Hickey v. Hickey* (1975), 31 Ill. App. 3d 257.

In the present case, although Carol testified that she wished to move to advance her career and financial well-being, her new position in Yuma would pay little, if any, more than she is earning now. Moreover, the petitioner admitted on cross-examination that she really was not looking for work. Thus, petitioner's claim that the move

was motivated by desire to enhance her career is questionable.

Petitioner's assertion that she cannot find comparable work is also questionable. Although the petitioner testified she would not be able to find employment at an accredited nursing program in the Belleville area, she admitted that she had not looked for work in the St. Louis area because it would not be feasible to commute from her Belleville home. In response to this assertion, we note that an appellate court in this State that was confronted with the same issue in a remarkably similar case, stated: "We fail to follow petitioner's argument that it would be worth moving to Arizona to find a *** nursing position but not worth moving within the [St. Louis/Belleville] area to find a similar position." See *In re Custody of Anderson* (1986), 145 Ill. App. 3d 746, 752.

The petitioner additionally alleged that the move to Arizona would improve her other son's asthmatic condition. As the trial court noted, there was no evidence introduced on how the move to Yuma would affect Bernie's asthma. (*Cf. Hickey,* 31 Ill. App. 3d 257.) We are compelled to agree with the father that the petitioner failed to meet her burden of proof that the removal to Arizona would be in the best interests of the child. Moreover, there was evidence introduced establishing that Mark Eckert was "an exemplary parent" and that he had an exceptionally good relationship with his son. (148 Ill. App. 3d 512, 524 (Welch, J., dissenting).) Additionally, several witnesses testified that the petitioner did not cooperate with respondent regarding visitation. This was corroborated by Matthew, who told the trial judge in chambers that he was was *not* allowed to phone his father and did not understand why. Finally, most of Matthew's extended family lives in the Belleville area, including all three of his surviving grandparents.

We conclude that the record supports the trial court's order denying permission to remove the child to Arizona. "The trier of fact had significant opportunity to observe both parents and the child and, thus, is able to assess and evaluate their temperaments, personalities, and capabilities. We should not disturb the determination of the trial court unless it has resulted in manifest injustice or is against the manifest weight of the evidence. The presumption in favor of the result reached by the trial court is always strong and compelling in this type of case." *Gallagher v. Gallagher* (1978), 60 Ill. App. 3d 26, 31-32.

We recognize that our society is a mobile one. (See *Spencer v. Spencer* (1971), 132 Ill. App. 2d 740, 743.) However, we decline to adopt the standard set out by the appellate court because it substantially dilutes the burden of proof the legislature has placed on the custodial parent seeking to remove the child to another jurisdiction. We reiterate that the burden of proof is on the custodial parent to establish that the move, considering its possible impact on visitation, as well as all other relevant factors, would be in the child's best interest.

We further conclude that the trial court did not err in denying an order authorizing the release of all information regarding the best interests of Matthew obtained by psychologist, Dr. Thomas Evans, who had counseled both parties. Initially, we note that without an offer of proof for the record, the reviewing court cannot determine the nature and significance of the excluded evidence (*In re Marriage of Milovich* (1982), 105 Ill. App. 3d 596, 610), and therefore, it is technically waived. Moreover, the petitioner has failed to provide any authority in support of this proposition. We note, finally, that while the testimony of a psychologist is generally acceptable to ascertain the best interests of the child, such testimony is not dispositive of the issue. (See *In re Marriage of Auer* (1980), 86 Ill. App. 3d 84; *In re Marriage of Sieck*

(1979), 78 Ill. App. 3d 204.) We therefore find that the court did not abuse its discretion in denying an order authorizing the release of all information obtained by Dr. Thomas Evans. See generally *In re Marriage of Semmler* (1980), 90 Ill. App. 3d 649, 652.

We therefore reverse the judgment of the appellate court and affirm the judgment of the circuit court of St. Clair County denying the petition for removal.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE SIMON took no part in the consideration or decision of this case.