*In re* MARRIAGE OF NANCY M. STONE, Petitioner-Appellant, and FREDERICK W. STONE, Respondent-Appellee.

First District (6th Division) No. 1—89—0854

Opinion filed June 29, 1990.

David A. Thompson, of Hanover Park, for appellant.

Stuart B. Dubin, Ltd., of Chicago (Stuart B. Dubin, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Petitioner, Nancy M. Stone, sought a court order permitting her to remove her three minor children from Illinois to Colorado. Her ex-husband, respondent Frederick W. Stone, objected to the petition. The trial court denied the petition, and petitioner appeals. She contends that the court's order is against the manifest weight of the evidence.

The parties were married on September 13, 1975. The marriage was dissolved in April 1985 in the State of Idaho. On July 27, 1988, the petition to remove the children from Illinois to Colorado was filed.

At the August 19, 1988, hearing on the petition, petitioner testified that respondent is an airline pilot. Petitioner has worked part time at various jobs, and attended college to obtain a degree in accounting. During their nine years together, respondent was in the Air Force, and the parties lived in Nevada, in England, in Idaho, returned

again to England, and then returned to Idaho.

They lived in Idaho for approximately five years. For nine months after the parties' separation, petitioner and the children remained in Idaho. Respondent visited the children in Idaho. He was out of military service and lived near Pittsburgh. When the children moved to Chicago, respondent visited for one week each month to see the children.

Heather is now 12 years old, and Jason and Alexander are 9 years old. Alexander suffers from cerebral palsy, which resulted in severe brain damage caused by severe trauma either during birth or prior to birth. He attended a severe learning disability (SLD) program in Idaho, and is now attending an SLD program in Chicago.

In August 1985, petitioner and the children moved to Chicago. Her parents and siblings assisted her in financially supporting the children. She lives with the children in an apartment building owned by her parents. Her parents, grandmother, and brother also have apartments in the building. She paid $350 per month when she could afford it. In 1985 and 1986, petitioner completed an associate's degree at Daley College in Chicago. She worked part time on weekends demonstrating different products for a food company. She was also on a list for accounting temporary personnel. After obtaining her associate's degree, she attempted to get full-time employment several times, but was confronted with day-care problems for the children. Her parents worked, and only her 70-year-old grandmother was at home to take care of the children after school. Petitioner did not work full time because of the children's needs, particularly Alexander's need for special care.

Petitioner seeks to return to Colorado, where she lived for seven years, and graduated from high school. Her fiance, William Andrejasich, previously an Illinois State trooper, has obtained employment with the Denver Police. They plan to marry in Denver. Petitioner's parents bought an apartment building in Denver, and her mother had moved there. Petitioner's mother works in Denver; petitioner's father previously worked at the University of Colorado. Petitioner's grandmother has also moved to Colorado. Petitioner and children, her parents and her grandmother would all have apartments in the building her parents purchased.

Petitioner would finish her college education in accounting at the University of Colorado and obtain her CPA certification. She would care for children to earn money while she completed her degree. Heather and Jason would attend Catholic schools. Alexander would be enrolled in the Denver public school special education program.

Petitioner testified that she wished to move to Denver "[t]o improve my kids' and my life, and to get on with our life." She had never planned on staying in Chicago permanently, and had always hoped she could return to Denver. She and respondent had always agreed they did not want to raise the children in Chicago or in any eastern city. Her plans to move were not intended to deprive respondent of his visitation rights.

Jessie Garcia, petitioner's father, testified on her behalf. At the time of the hearing, he owned an apartment building in Chicago, and rented apartments to his mother-in-law, to his son, and to petitioner. Petitioner pays rent when she can afford it. He assists his daughter financially in buying food and clothing for the children. He would continue to assist petitioner financially if she were compelled to remain in Chicago. In Chicago, the children have supper with their grandparents every evening. Petitioner took some part-time work, but had to be home when Alex returned from the special education classes.

Garcia had completed his plans to move to Denver. He bought a four-unit apartment building. His wife was already in Denver, working, and living in one of the apartments. The apartment building was very nice, as was the neighborhood itself.

In Denver, Garcia planned to assist his daughter in finishing her education and obtaining her CPA. They were investigating the possibility of petitioner providing day care at home in Denver. Garcia had obtained a commitment from a professor at the university to hire petitioner to care for his three children.

Respondent testified that he was an airline pilot residing in Pittsburgh. He visits his children for one week each month in Chicago. Since June 1986, respondent has shared the rent on an apartment in Chicago with his father, and used his father's car when in Chicago. Petitioner never discussed the move to Denver with him. He never indicated to petitioner that he objected to the children being raised in Chicago. Respondent's sister and cousin live in Chicago and see the children every month. Other relatives also live near Chicago. He has no family in Denver.

Respondent testified it would be "extremely difficult" for him to get to Denver. It would involve "longer airline flights, possible connections, not being able to get there at all the [sic] due to the planes being full. I can only travel on a space-available basis if there is [sic] openings in the flights." On other airlines, he flies for 50% of the regular fare. In addition, there would be financial problems "of the added expense of an apartment without me and my dad splitting the rent; and, of course, having a car that is available so that I can take the

kids where they need to, the expenses are substantially more." In order to see the children each month, he has to rearrange his schedule so he can be off the entire week. It is "relatively easy" to get to Chicago, as there are 13 round trip flights a day.

Frederick W. Stone, respondent's father, testified on behalf of respondent. He works for the city in the department of public works. For two years, since June 1986, he had seen his grandchildren for one week each month. Respondent had asked Stone if he "would be good enough to move out of my downtown apartment *** and he asked me if I would be willing to get an apartment in the old neighborhood and share it with him on a share-cost basis." When respondent's flights are late, Stone picks up the children. If the children moved, he would see them once a year.

The court denied the petition for removal of the children from Illinois.

On March 1, 1989, a hearing was held on petitioner's motion for reconsideration of that ruling. Petitioner testified that her father had not sold the Chicago apartment building or moved yet, "because of me." She had seen a motel kitchenette near the airport in Denver which she thought respondent could use when he visited the children. He would pay $75 per week. In addition, he would pay $75 a week to rent a car.

The court denied the petition for reconsideration. It noted that "more than half" of the evidence it heard was the same evidence that was before the court at the hearing, "or was evidence that was available at that time that could have been brought before the court." The court refused to reopen the proofs or grant a new trial.

The court found petitioner "really made no attempt to find any such employment here in Chicago." She could go to college, and her parents could "support her financially" here. As to baby-sitting problems, there was little or no difference between the situation in Chicago and in Denver. In regard to petitioner's assertion that she was going to remarry, and that her fiance had found work in Denver, the court noted that petitioner failed to show why he could not work in Chicago since he was only going to Denver to follow petitioner, not because his job required it. The court concluded, "I do not like to prohibit somebody from going somewhere to be with their family—but I will deny your motion."

■ The court may grant leave to the custodial parent to remove the children from Illinois where such approval is in the best interests of the children. Under Illinois law, the burden of proving that the removal is in the best interests of the children is on the party seeking

the removal. Ill. Rev. Stat. 1987, ch. 40, par. 609.

■ The mere desire of the custodial parent to move out of Illinois, without more, is insufficient to show that the move is in the children's best interests. (*In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 518 N.E.2d 1041.) The determination of what is in the best interests of the children requires an evaluation of many factors and cannot be reduced to a simple bright-line test. (*In re Marriage of Eckert*, 119 Ill. 2d 316, 518 N.E.2d 1041.) The court should consider the proposed move in terms of likelihood for enhancing the general quality of life for both the custodial parent and the children. *In re Marriage of Eckert*, 119 Ill. 2d 316, 518 N.E.2d 1041; *Gallagher v. Gallagher* (1978), 60 Ill. App. 3d 26, 376 N.E.2d 279.

■ The court must recognize that it is in the best interests of children to have a healthy and close relationship with both parents, as well as with other family members, and thus the visitation rights of the noncustodial parent should be carefully considered. (*In re Marriage of Eckert*, 119 Ill. 2d 316, 518 N.E.2d 1041, citing *In re Marriage of Brady* (1983), 115 Ill. App. 3d 521, 450 N.E.2d 985.) It is also important to determine whether a realistic and reasonable visitation schedule can be reached if the move is allowed, which will preserve and foster the child's relationship with the noncustodial parent. (*In re Marriage of Eckert*, 119 Ill. 2d 316, 518 N.E.2d 1041; *In re Custody of Anderson* (1986), 145 Ill. App. 3d 746, 496 N.E.2d 345.) A trial court's determination of what is in the best interests of the children should not be reversed unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred. *In re Marriage of Eckert*, 119 Ill. 2d 316, 328, 518 N.E.2d 1041, citing *Quirin v. Quirin* (1977), 50 Ill. App. 3d 785, 365 N.E.2d 226; *Hickey v. Hickey* (1975), 31 Ill. App. 3d 257, 333 N.E.2d 271.

In the present case, petitioner testified that she wished to move to complete her college education and to obtain her parents' financial assistance. The evidence showed, however, that those same goals could be met in Chicago. Petitioner's father testified that he would continue to assist petitioner financially if she remained in Chicago. Interestingly, petitioner never attempted to finish her college education and obtain her CPA during the last several years she lived with her parents in Chicago. Petitioner testified she would provide day care to earn money in Denver. Yet she never attempted to earn money in this manner in Chicago during the several years prior to filing this petition, and never sought full-time work.

■ We conclude that the trial court could properly find that "[petitioner's] reasons for not working or not going to school here [in Chi-

cago are] insufficient for me to say that the quality of life here would not be sufficient for the children to live if she would make whatever efforts that were necessary for her to reasonably be allowed to become self-sufficient to support those children."

Moreover, the evidence established that respondent was an exemplary parent who had an excellent relationship with his children. Respondent asked his father to move from downtown and share an apartment with respondent and the children one week each month. Respondent and his father moved to the new apartment; furnished it; purchased a car together; and established the apartment as a home for the children a week each month. Respondent participates extensively in the children's school and other activities. It was more difficult for respondent to fly to Denver than to Chicago, and it would be financially difficult because he would have to pay additional rent and get a car.

Petitioner urges that respondent rent a motel kitchenette one week each month in Denver, where the children could stay with him. The trial court was not required to find such an arrangement, as compared with the Chicago home they shared with their father and grandfather, would enhance the general quality of life for the children, or otherwise be in their best interests.

In addition, most of respondent's extended family lives in the Chicago area. (See *In re Marriage of Eckert*, 119 Ill. 2d 316, 518 N.E.2d 1041.) The children spend one week each month living with their paternal grandfather. During that time, they have frequent contact with their extended family.

We conclude that the record supports the trial court's order denying permission to remove the children to Colorado. The evidence sufficiently supports the trial court's decision that petitioner failed to meet her burden of proof that the removal to Colorado would be in the best interests of the children.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

LaPORTA, P.J., and EGAN, J., concur.