In re MARRIAGE OF VICKI L. PFEIFFER, Petitioner-Appellee, and WILLIAM D. PFEIFFER, Respondent-Appellant.

Third District   No. 3—91—0633

Opinion filed December 2, 1992.—Rehearing denied December 31, 1992.

McCUSKEY, J., dissenting.

Lisa Oakley, of Schmiedeskamp, Robertson, Neu & Mitchell, of Quincy (Mark A. Drummond, of counsel), for appellant.

Patricia M. Parker, of Reynolds, Murphy & Associates, P.C., of Peoria (G. Edward Murphy, of counsel), for appellee.

JUSTICE GORMAN delivered the opinion of the court:

This case involves a petition to remove a minor child from Illinois. The trial court granted that petition and the father appeals. We affirm.

Vicki and Bill Pfeiffer were married in 1985 and lived in Macomb. In 1986, the parties' only child, Adam, was born. The marriage was subsequently dissolved on May 3, 1989. Under the dissolution judgment, the parties had joint custody of Adam, with Vicki having physical custody. Bill was granted liberal visitation rights.

Shortly after the dissolution, Vicki moved to Peoria from Macomb to take a job with the Peoria Association for Retarded Citizens (PARC). She worked as a program instructor earning $12,000 per year. After the move, the parties agreed to a modification of Bill's custodial time so that Adam could attend the same day-care center throughout the week. Bill never missed his custodial time.

During this time, Vicki began seeing Eric Henrikson. He then moved to the Washington, D.C., area to take a job with the National Cancer Institute. Prior to his move, he proposed to Vicki. She eventually accepted and the two were married in February 1990. After the marriage, Vicki remained in Peoria until she obtained the court's permission to take Adam out of Illinois on a temporary basis, pending a final determination. In Washington, Vicki obtained a job working with the developmentally disabled at a salary of $21,175.

A hearing was held on Vicki's petition for removal in February 1991. Both parties testified as well as numerous relatives. Additionally, Dr. Frank Froman, a psychologist, testified as an expert witness. He had been appointed as the child's witness at Bill's request. The trial judge also conducted an *in camera* interview of Adam. After hearing the evidence and arguments, the trial court granted Vicki's petition. Bill now appeals from that order.

Leave to remove a child from the State of Illinois is governed by section 609 of the Illinois Marriage and Dissolution of Marriage Act, which states in relevant part:

> "(a) The court may grant leave, before or after judgment, to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of such child or children. The burden of proving that such removal is in the best interests of the child or children is on the party seeking the removal."
> Ill. Rev. Stat. 1991, ch. 40, par. 609(a).

■ On review, a strong and compelling presumption exists in favor of the trial court's determination; this court will not disturb the trial court's judgment unless that judgment results in manifest injustice or is against the manifest weight of the evidence. (*In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 518 N.E.2d 1041.) The best interests of the child cannot be determined by a bright-line test, but must be examined on a case-by-case basis. (*Eckert*, 119 Ill. 2d at 326, 518 N.E.2d at 1045.) In *Eckert*, the supreme court listed several factors for the trial court to look to in ruling on a petition to remove:

> "The court should consider the proposed move in terms of likelihood for enhancing the general quality of life for both the custodial parent and the children. [Citations.] The court should also consider the motives of the custodial parent in seeking the move to determine whether the removal is merely a ruse intended to defeat or frustrate visitation. [Citations.] Similarly, the court should consider the motives of the noncustodial parent in resisting the removal. [Citation.] It is also in the best interests of a child to have a healthy and close relationship with both parents, as well as other family members. Therefore, the visitation rights of the noncustodial parent should be carefully considered. [Citations.] Another factor is whether, in a given case, a realistic and reasonable visitation schedule can be reached if the move is allowed." 119 Ill. 2d at 326-27, 518 N.E.2d at 1045-46.

■ In its order granting the petition, the trial court specifically mentioned the *Eckert* factors and weighed each one. It is not the function of this court to reweigh the evidence or assess the credibility of testimony and set aside the trial court's determination merely because a different conclusion could have been drawn from the evidence. (*Evans v. Sisters of the Third Order of St. Francis* (1987), 154 Ill. App. 3d 137, 506 N.E.2d 965.) Our review reveals that the trial court's judgment is not against the manifest weight of the evidence.

■ The first factor to consider is the likelihood for enhancing the general quality of life for Vicki and Adam. The court noted that Vicki had a higher paying job in Maryland than she did in Peoria, as well as a chance for advancement. Moreover Vicki and Eric's combined income is higher than Bill's and their earning potential is greater. While declining to make a comparative finding, the court stated that it would seem that adequate schools, medical facilities and housing would be available after the move. Additionally, the

court properly considered the indirect benefits to Adam which would result from Vicki establishing a new and successful marriage relationship. (*In re Marriage of Carlson* (1991), 216 Ill. App. 3d 1077, 576 N.E.2d 578; *In re Marriage of Taylor* (1990), 202 Ill. App. 3d 740, 559 N.E.2d 1150.) This would enhance her quality of life significantly and in that way would indirectly enhance the child's quality of life. We do note, however, that this factor, standing alone, is insufficient to merit the granting of a petition for removal. *In re Marriage of Berk* (1991), 215 Ill. App. 3d 459, 574 N.E.2d 1364.

The second factor is Vicki's motive in seeking the move. This was the subject of much testimony at the hearing. The court observed a great amount of animosity between Bill and Eric. When Vicki met Eric, he was finishing his master's degree in microbiology. Upon completion of that, he sought to find employment, but did not try to find a job in Illinois or the surrounding States. He testified that there are only approximately three cities in the country where he could pursue his particular area of expertise in molecular biology. At the time of the hearing, Eric was employed by the Food and Drug Administration as a research scientist for the Department of Health and Human Services. The trial court specifically found that it was reasonable that, in specific areas of science, one might have to go where the work is being conducted. Accordingly, the court specifically found that the move was not an attempt to thwart visitation. Upon review, we are unable to say that determination is against the manifest weight of the evidence.

The next factor is Bill's motives in resisting the move. Bill has always exercised his custody and visitation rights. Vicki testified that if the petition were denied, she and Eric would move back to Illinois. The trial court found that Bill had valid motives in resisting the move. We agree.

The final two factors to examine are Adam's relationship with both parents and other family members and whether realistic and reasonable visitation can be maintained. Most of Bill's relatives live in Quincy, while Vicki's relatives are in the Peoria area. Obviously, this move could possibly lessen the child's contacts with his extended family. That factor alone, however, is insufficient to deny the petition. This court addressed similar facts in *In re Marriage of Taylor* (1990), 202 Ill. App. 3d 740, 559 N.E.2d 1150. There, we recognized that the mother was willing to allow liberal visitation, including extended summer visitation with the father.

The same is true here. The trial court ordered visitation of three weeks and then an additional two weeks in the summer, as well as visitation at Christmas, Thanksgiving, and Easter or spring break. Additionally, the court cautioned Vicki and Eric not to impede phone conversations between Adam and Bill or between Adam and his relatives in Illinois. The trial court was of the opinion that a meaningful relationship could be maintained through such visitation.

Bill also challenges that schedule, arguing that, if the petition is granted, he should have custody the entire summer. We, however, feel that the schedule is reasonable under the circumstances and is not against the manifest weight of the evidence.

Bill points to the testimony of Dr. Froman as evidence that the move is not in Adam's best interests. The trial court, however, found that Dr. Froman's testimony was flawed. He had been appointed at Bill's request. The only guidance Dr. Froman had was a copy of *Eckert* which Bill's attorney sent to him. Dr. Froman interviewed Bill and Adam but never spoke with Vicki or Eric.

Dr. Froman testified that he did his report on the basis of an initial custody determination, as opposed to a petition to remove the child from the jurisdiction, which carries a different standard. Dr. Froman admitted that his opinion would have been aided by a clearer definition of his mission. The court then conducted an *in camera* interview with Adam and did not find the animosity between Adam and Eric that Dr. Froman mentioned in his report. For these reasons, the court found that Dr. Froman's opinion was flawed, through no fault of his own. Accordingly, the trial court chose to give no weight to Dr. Froman's testimony.

After the hearing, Bill sought to introduce a supplemental report authored by Dr. Froman. The trial court rejected that attempt. Bill now argues that, at a minimum, this case should be remanded for a new hearing so that he can supplement Dr. Froman's report.

■ It is completely within the trial court's province as trier of fact to determine the weight to be given each witness' testimony, and this assessment will not be disturbed absent an abuse of discretion. (*In re Marriage of Eltrevoog* (1982), 92 Ill. 2d 66, 440 N.E.2d 840; *Tsai v. Kaniok* (1989), 185 Ill. App. 3d 602, 541 N.E.2d 819.) The trial court heard evidence from 10 witnesses other than Dr. Froman. In addition, he conducted an *in camera* interview with Adam. The record reveals the he had ample information on which to base his judgment, and there is no need to reopen the hearing for any additional evidence.

As the supreme court noted in *Eckert*, cases such as this are very fact intensive and determinations must be made on a case-by-case basis. (*Eckert*, 119 Ill. 2d at 326, 518 N.E.2d at 1045.) The trial court is in the best position to make these determinations as it has the opportunity to hear the evidence while viewing the witnesses and their demeanor. Such a determination is presumed correct and a reviewing court cannot overturn the decision unless it is against the manifest weight of the evidence. *Eckert*, 119 Ill. 2d at 330, 518 N.E.2d at 1047.

The trial court found that Vicki had met her burden of showing that the move is in the best interests of the child. Upon review, we are unable to say that that determination is against the manifest weight of the evidence. We therefore affirm.

Affirmed.

STOUDER, J., concurs.

JUSTICE McCUSKEY, dissenting:

I respectfully dissent. Based upon my review of the record, I find the trial court's decision to be against the manifest weight of the evidence. Furthermore, I believe the majority has misapplied our supreme court's holding in *In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 518 N.E.2d 1041.

The trial court heard testimony that the father has never missed a visitation with Adam and shows a sincere desire to maintain and further develop their relationship. "When a parent has assiduously exercised his or her visitation rights, 'a court should be loath to interfere with it by permitting removal of the children for frivolous or unpersuasive or inadequate reasons.'" *Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1046, quoting *D'Onofrio v. D'Onofrio* (1976), 144 N.J. Super. 200, 206, 365 A.2d 27, 30.

It is also well established that it is in the best interests of children to have a healthy and close relationship with both parents, as well as with other family members, and thus the visitation rights of the noncustodial parent should be carefully considered. (*In re Marriage of Stone* (1990), 201 Ill. App. 3d 238, 559 N.E.2d 92.) In the instant case, the record shows the joint parenting agreement contains a provision stating that it is in Adam's best interest to have close, frequent and continuing contact with both parents. The joint parenting agreement also granted the father custody of Adam for extensive periods of time. In addition, the agreement's provisions

gave both parties equal rights regarding the major decisions in Adam's life on such issues as education, health care, and religious training.

All the evidence introduced indicates that the mother and father are both loving parents and Adam has a strong attachment to both of them. Residing in Illinois, Adam will be able to continue these essential contacts with both parents. Maintaining these relationships is *paramount* to the career objectives of the mother's new husband. Also, almost all of Adam's extended family members live in the area of Peoria and Quincy. Maintenance of these family contacts is very important for the best interests of Adam.

The record shows that Eric Henrikson, the mother's new husband, never applied for or sought a job in Illinois or any of the surrounding States. Henrikson also admitted there are positions available in Illinois for people with his job qualifications. The record also indicates Henrikson has discretion as to his place of employment. However, he clearly stated that he did not even bother looking for a position in Illinois.

Dr. Frank Froman, a psychologist, testified that Henrikson was the classic mean and meddling stepfather. Dr. Froman further related that Adam needs to maintain the continuity of the relationships he has, not only with his father but also with his extended family.

Applying the *Eckert* standards to the instant case, we first consider the likelihood that the proposed move will enhance the general quality of life for the child and the parent having physical custody. As far as the mother is concerned, the record does not show that her general quality of life will be directly enhanced by removing Adam to Washington, D.C. Nevertheless, the mother in the instant case seemingly overstates the importance of the impact of the move on her own quality of life. The focus at all times *must remain on the best interest of Adam*. The increase in the custodial parent's quality of life is *only* important insofar as it increases the child's quality of life and furthers the child's best interests. "If the obvious happiness the spouse would receive from being able to live with a new spouse were sufficient to prove removal [is] in the child's best interests, court supervision of the proceedings would be unnecessary, and at best, ceremonial." (*In re Marriage of Berk* (1991), 215 Ill. App. 3d 459, 466, 574 N.E.2d 1364, 1369.) I find the mother failed to sufficiently demonstrate that the best interests of Adam would be served by moving him from Illinois to Washington, D.C.

Additionally, I believe the majority has improperly applied the factors set forth in *Eckert* concerning: (1) whether removal is merely a ruse intended to defeat or frustrate visitation; and (2) if a realistic and reasonable visitation schedule can be reached if the move is allowed.

The trial court observed a great amount of animosity between Henrikson and the father. The record clearly shows that Henrikson had no intention of seeking employment in Illinois or the Midwest. I believe Henrikson's decision to seek employment in Washington, D.C., was calculated to severely limit the father's visits with Adam and remove the child from his extended family in Illinois.

I believe the majority opinion flies in the face of *Eckert* by minimizing the importance of the father's extensive visitation with Adam. Furthermore, the trial court's order granting the father five weeks' visitation in the summer is grossly inadequate to compensate for the extensive visitation previously granted by the joint parenting agreement. Considering the distance and the cost of travel to Washington, D.C., if removal was properly granted, the father should have been awarded visitation with Adam for the entire summer. I believe the limited visitation granted by the trial court was an abuse of discretion in light of the father's previous extensive visitation and the terms of the joint parenting agreement.

The majority opinion has misapprehended *Eckert*. The majority opinion has overlooked the fact that removal of Adam from Illinois will cause him to lose the *direct* benefit of his father's guidance in education and religious training as envisioned by the joint parenting agreement. *Eckert* emphasized the substantial impairment removal would have on the noncustodial parent's involvement with the child. *Eckert* focused on the best interest of the child and *not* on the professional improvement of the stepfather or the economic benefit to the petitioner.

The majority opinion improperly dwells on the indirect benefits that removal would have on the petitioner instead of focusing on the best interests of the child which should be the court's paramount concern. For the reasons indicated, I believe the petitioner has failed to meet her burden of proof, and therefore, I dissent.