*In re* MARRIAGE OF ELIZABETH ANN YOUNG, Petitioner-Appellant, and RORY EUGENE YOUNG, Respondent-Appellee.

Third District   No. 3—93—0968

Opinion filed June 24, 1994.

Thomas L. Kilbride, of Rock Island, for appellant.

James L. Neppl, of Anderson & Nelson, of Rock Island (Jeffrey C. McDaniel, of counsel), for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

Elizabeth Young, the petitioner, and Rory Young, the respondent, were divorced in Texas in 1988. The judgment of dissolution provided that they would be "joint managing conservators" of their minor son, Robert. Elizabeth was granted primary physical custody. During the pendency of the divorce, Elizabeth and Robert moved to Louisiana. Rory moved to Illinois after the divorce became final. One year later, Elizabeth moved to Illinois with Robert. In June 1993, Elizabeth filed a petition in the Rock Island County circuit court seeking permission to remove Robert to Louisiana. The trial court denied Elizabeth's petition. We find that the trial court's decision was clearly against the manifest weight of the evidence, and a manifest injustice to Elizabeth has occurred. Therefore, we reverse.

After carefully reviewing the record and the testimony given in this matter, we find that the most crucial factor under the circumstances presented is the financial stability of the custodial parent. The evidence reveals that the home, family, school and child care arrangements proposed for Robert in Louisiana are comparable, if not better, than the home, family, school and child care arrangements currently in force in Illinois. However, Elizabeth's economic circumstances would be greatly enhanced by the move.

With regard to her financial situation, Elizabeth testified that she had been working as a nurse's assistant for a little over one year, earning $6.50 an hour. This was a part-time job with no benefits. She was receiving public aid in the form of $175 a month in food stamps and a medical card.

Elizabeth had recently earned a two-year degree in nursing. Although she had applied for positions at several area hospitals, she had received only one interview—for a part-time position at a lower rate of pay than she was currently receiving. She continued to watch the job postings and inquire regarding available positions. Elizabeth testified that she considered taking a position in several other cities but discovered that those hospitals were either not hiring or hiring for positions for which she did not believe she was adequately skilled. She was not aware of any available positions with private physicians

in the Moline area. Elizabeth's future plans included continuing her education in nursing; she hoped to teach nursing eventually.

Elizabeth stated that she had been offered a position with Willis Knighton Medical Center in Shreveport, Louisiana. She would be working three 12-hour shifts each week at a pay rate of $19.11 an hour for weekdays and $21.11 an hour for weekends. The benefits would include health and dental insurance, a retirement plan and a tuition-reimbursement plan.

The trial court found that Robert was well adjusted to his life in Illinois and that Robert and his father, Rory, have a close relationship. Further, it noted that the job market for nurses in the Moline area was tight but found that Elizabeth had not made a great enough effort to find employment. Finally, the court concluded by saying:

> "I am going to deny the petition for removal based on the best interests of the child. *** I don't believe at this time when the child is doing well that we should move him. *** I don't want to disturb the child's progress ***."

Initially, Elizabeth argues that because the terms of the Texas judgment of dissolution grant her the power to establish Robert's residence, and those terms have not been modified, the Illinois courts are bound by the terms and must ratify her decision to move Robert to Louisiana.

Section 14.021 of the Texas Family Code requires that each custody agreement designate one parent to have the "sole legal right to determine the residence of the child." (Tex. Fam. Code Ann. § 14.021(c)(1) (West Supp. 1994).) Under the Uniform Child Custody Jurisdiction Act, Illinois must recognize and enforce the judgment of another State exercising jurisdiction pursuant to the Act. 750 ILCS 35/14 (West 1992).

Although we were unable to locate any Texas cases which analyze Elizabeth's argument that the Texas dissolution terms give her the power to establish Robert's residence anywhere she chooses, we find that we need not reach this issue because even when applying Illinois law, the trial court was in error in denying her petition.

Section 609 of the Illinois Marriage and Dissolution of Marriage Act provides that a court may allow a child to be removed from the State of Illinois when such removal is in the best interest of the child. (750 ILCS 5/609(a) (West 1992).) The burden of proof rests on the party requesting removal. (750 ILCS 5/609(a) (West 1992).) In *In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 518 N.E.2d 1041, the Illinois Supreme Court set out several factors which should be considered in determining whether removal is in the best interest of the child. These factors include: (1) the likelihood for enhancing the

general quality of life for both the custodial parent and the child; (2) the motives of the parents in seeking and opposing the removal; (3) the visitation rights of the noncustodial parent; and (4) the potential harm to the child. (*Eckert*, 119 Ill. 2d 316, 518 N.E.2d 1041.) The trial court's determination on removal should not be overturned unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred. *Eckert*, 119 Ill. 2d 316, 518 N.E.2d 1041.

In the case at bar, it is clear that the trial court failed to engage in the analysis required by *Eckert*. Instead of weighing the factors set forth in that case, the trial court appeared to require Elizabeth to show that Robert was in some way harmed by living in Illinois and that the harm would be removed by moving to Louisiana. Having done that, the trial court ignored the most obvious "harm" to Robert in continuing to live in Illinois—his and Elizabeth's continued dependence on public aid. Moreover, the court improperly speculated that Elizabeth might be able to find an acceptable position in Moline if she only looked hard enough. Applying the *Eckert* analysis, we find it in Robert's best interest to allow removal.

■ The first factor to consider is the likelihood of enhancing the general quality of life for *both* the custodial parent and the child. In Louisiana, Elizabeth could be supporting herself and Robert without State aid; she could even be saving money toward the purchase of a home for herself and Robert. In other words, the quality of life for both Elizabeth and Robert will be vastly improved.

The second *Eckert* factor is the motives of the parents in applying for and opposing removal of the child. As to this issue, we find no evidence that Elizabeth or Rory is motivated by anything other than love and concern for Robert.

The third consideration is whether a visitation schedule can be arranged so that a close and loving relationship can be maintained between Rory and Robert. In our analysis, we must keep in mind that the preference of the noncustodial parent to have consistent day-to-day contact with the child is not enough to chain the custodial parent to the State of Illinois. (*In re Marriage of Zamarripa-Gesundheit* (1988), 175 Ill. App. 3d 184, 529 N.E.2d 780.) We find that the visitation schedule proposed by Elizabeth is sufficient to meet the requirement of maintaining a relationship between Rory and Robert. We note that this is the schedule to which Rory agreed at the time of the dissolution, when Elizabeth intended to live in Louisiana and Rory intended to live in Illinois. Therefore, we hold that Rory shall have visitation with Robert each summer from one week after the school year recesses until one week prior to its resumption; Christmas

vacation shall be divided between the parties and they shall alternate Thanksgiving and spring break.

The fourth, and last, *Eckert* factor is the potential harm to the child. We find that the harm posed by removal in the instant case is no greater than in any case, and in some ways is considerably less. Although Robert will be farther away from Rory's extended family, he will be closer to Elizabeth's. The schools are of equal caliber. He will still be able to spend extended periods of time visiting with Rory. The greatest change in circumstances will not be a harm, but instead an advantage—the chance to be economically independent and free of public aid.

■ Finally, we note that in announcing its decision, the trial court said to Elizabeth, "If you want to go down there, perhaps you could switch custody and you go down there." We find that it is manifestly unjust for a trial court to invite a custodial parent to choose between her career and her child. "Custodial parents should not be expected to give up careers for the sake of remaining in the same geographical location." *In re Marriage of Good* (1991), 208 Ill. App. 3d 775, 778, 566 N.E.2d 1001, 1003.

Accordingly, we hold that, all other things being equal, it is an abuse of discretion to deny a custodial parent permission to remove a child when the removal would allow the custodial parent to terminate a reliance on State aid, establish economic self-sufficiency and advance her career. The judgment of the circuit court of Rock Island County is therefore reversed and visitation is ordered as specified herein.

Reversed.

BARRY and McCUSKEY, JJ., concur.