(No. 79053.—)

*In re* MARRIAGE OF CHERI SMITH, n/k/a Cheri Mayer, Appellant, and THOMAS SMITH, Appellee.

*Opinion filed March 21, 1996.—Rehearing denied June 3, 1996.*

HEIPLE, J., took no part.

Heiple & McMillan (Bradley S. McMillan, of counsel), and Robert D. Gaubas, all of Peoria, for appellant.

Franklin L. Renner, of Peoria, for appellee.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

Cheri Mayer, formerly known as Cheri Smith, filed a petition in the circuit court of Peoria County seeking sole custody of the parties' two daughters and for permission to remove the children from Illinois to New Jersey. In response, Thomas Smith filed his own petition seeking sole custody of the children. The circuit court granted Cheri sole custody and denied her request for removal. The appellate court affirmed the circuit court's judgment. No. 3—94—0162 (unpublished order under Supreme Court Rule 23). We allowed Cheri's petition for leave to appeal (145 Ill. 2d R. 315) and now affirm.

## FACTS

The parties' marriage was dissolved in 1989. In 1990, the circuit court entered an order approving a joint parenting agreement which established joint custody of the parties' two daughters, Courtni, born in 1982, and Brittni, born in 1987. Physical custody of the children was shared, almost equally. During the first and third weeks of each month, Cheri had the children for five days in a row, and Thomas had them for two days. During the second and fourth weeks, Cheri had the children for about $2^1/_2$ days, and Thomas had them for about $4^1/_2$ days. The parties also shared alternating holidays and birthdays and were allowed an uninterrupted two weeks of vacation with the children each summer.

On October 30, 1992, Cheri Mayer filed her petition to modify custody and for permission to remove the children from Peoria, Illinois, to the State of New Jersey. The petition asserted that there had been a substantial change in circumstances since the joint custody arrangement in that: (1) Cheri has remarried and has a stable, loving relationship with her new spouse, Michael Mayer; (2) Cheri has stopped working at her previous full-time employment and is available to spend almost all her time with the children; and (3) Thomas, individually, and with his new spouse, Laura Smith, has engaged in a comprehensive scheme in an attempt to deny Cheri a normal loving relationship with the children. Cheri also filed a petition requesting the court to order psychological evaluations of all the parties and the children.

On January 19, 1993, Thomas Smith filed his own petition for modification of custody. He too sought sole custody of Courtni and Brittni.

By agreement of the parties, the circuit court heard evidence on the custody and removal issues at the same time. Witness testimony took place over the course of several months in 1993.

Cheri testified that, on March 24, 1992, she married Michael Mayer, whom she met through work. Michael was already living in New Jersey at the time of the marriage. After the marriage, Michael stayed in New Jersey and Cheri stayed in Peoria with her children. When Cheri traveled to New Jersey to see Michael, she stayed for five consecutive days while the children stayed with their father. Cheri quit work on June 5, 1992, in order to spend more time with her children and new husband. She no longer needed to work for financial reasons. Cheri believed that a move to New Jersey would benefit the children because she could spend more time with them and she could remove them from what she considered to be a pattern of negative influence against her.

Cheri testified at length about a pattern of detrimental behavior and denigration by Thomas and Laura Smith toward her, which damaged the bond between her and her daughters. We need not detail this extensive testimony here, but simply note that much of Cheri's testimony in this respect was corroborated by other evidence. Cheri admitted that the relationship between herself and Courtni was strained as a result.

Cheri testified that she and her new husband had investigated the Newton-Sparta area of New Jersey as the place where they would likely live if the removal petition was granted. The children had already been accepted by a private Christian school in New Jersey, and it was comparable to the private Christian school that Courtni attended in Peoria. Cheri had located a Lutheran church in the Newton-Sparta area, which was similar to the church she and her daughters attended in Peoria. Christian family counselors for the children were available in New Jersey. Cheri also described the numerous cultural opportunities available to her daughters in New Jersey, such as Girl Scouts, historical sites, plays, and concerts. If removal should be allowed, Cheri stated, she would be willing to work with Thomas on a visitation schedule. She believed that flight arrangements between Peoria and New Jersey were easy to make.

Cheri's new husband, Michael Mayer, testified that he is a senior vice president at Beneficial Management Corporation, earning approximately $200,000 per year. He has lived in New Jersey for the past eight years. Michael frequently visited Cheri and her daughters in Peoria. He had located available permanent housing in New Jersey for himself, Cheri, and the children. Cheri had told Michael that, if she does not gain custody of the girls, she does not intend to move to New Jersey. He has never expected Cheri to leave her children. In fact,

Michael testified that, when he and Cheri first married, Cheri's intention was to stay in Illinois with her children pursuant to the joint custody arrangement. It had not been practical for Courtni and Brittni to come from Peoria to New Jersey for weekend visits.

Thomas Smith testified that he is employed by S&K Chevrolet in Peoria and earns about $100,000 annually. He married his present wife Laura in 1991. He and Laura had their first child together in April 1993. Thomas stated that he and his wife enjoy a good relationship with his daughters. Prior to his divorce from Cheri, Thomas took care of Courtni and Brittni much of the time while Cheri worked. Thomas believed that, as a result, Courtni failed to develop a close bond with her mother during her early years.

Thomas further testified that he takes Courtni fishing. He swims with the children, plays basketball with them, and takes them golfing, to the theater, and to Peoria Civic Center events. He helps Courtni with her homework. He took a different position at work so that he could spend more time with the girls.

Thomas admitted discussing several adult issues with Courtni, including that he pays $1,055 per month to Cheri for child support. He told his daughters that he could not afford to buy a home because of these payments.

Dr. Leonard Elkun, Cheri's expert witness, testified that he has specialized in the practice of psychiatry since 1967. Dr. Elkun found Courtni to be a troubled 11-year-old child. She was being given too much information about her father's unresolved feelings of anger about paying child support. Dr. Elkun stated that a parent should not tell children that the parent cannot afford to buy a house because of child support payments. This information burdens the children with adult issues, with which they should not be dealing. Dr. Elkun

opined that a move to New Jersey would benefit the children because it would remove them from the acrimony and the negative influences surrounding them.

The circuit court appointed psychotherapist Thomas Goossens to conduct psychological evaluations of all the parties and the children. In short, Goossens' testing revealed that Courtni was very troubled. He highly recommended that all stress, pressure, and conflict be minimized in her life. He found it possible that the joint parenting arrangement, which involves a constant shuttling between two households, is causing Courtni emotional stress and strain. He also found Courtni to be unable to cope with the adult issues being presented to her. He specifically recommended that the girls' involvement with adult issues be minimized. Goossens last expressed his concern regarding Cheri's plans to relocate the children to New Jersey if she is awarded sole custody. He believed that such a change would prove to be too big of an adjustment for Courtni and would adversely affect her.

The circuit court conducted an *in camera* interview of Courtni on October 29, 1993. The circuit court entered a written opinion on the removal and custody issues on December 2, 1993. The court first ruled on the petition for removal based on its finding that the petitions for modification of custody were filed in response to the removal request. See *In re Marriage of Benson*, 217 Ill. App. 3d 564, 566-67 (1991).

As to the removal issue, the trial judge concluded that it was in the children's best interests to remain in Peoria. He agreed with Goossens' testimony that removal to New Jersey would be severely detrimental to Courtni's mental health.

The judge held that, although Cheri's life may be enhanced by moving to New Jersey, where she could join her new husband, the removal would nonetheless

be against the children's best interests. He found that Cheri had two motives for the move: to be with her husband and to reduce the tension of the current situation. The first motive was proper, the judge found. The second reason was understandable, but was not convincing in light of the severe psychological trauma it would cause to the children. The judge further found Thomas' motives in contesting the move to be proper, as he simply desired to remain in close proximity to his daughters. Finally, the judge stated that visitation between Thomas and his daughters would be extremely difficult if the removal petition should be granted, in part because the children would be required to spend considerable time traveling.

As to the custody issue, the trial judge held that a substantial change of circumstances had occurred: both parties had remarried and, more importantly, the relationship between the parties had deteriorated to the point of complete acrimony. Therefore, he concluded, sole custody in either parent would be preferable to the current situation. The judge then found it in the children's best interests to award sole custody to Cheri. The judge stated that Thomas and Laura Smith were less suitable than Cheri as sole custodians of the children because they had deliberately tampered with the children in an effort to destroy their bonds with their mother. The judge agreed with Dr. Elkun's observation that this tampering has been harmful to the children.

The trial judge also concluded that many of the parties' problems could be solved by a change in the visitation schedule and by imposing restrictions on the parties' conduct. Accordingly, he ordered liberal visitation for Thomas Smith consisting of alternate weekends, alternate holidays, and some time during the week when he does not have the children for the weekend. This would enable Courtni and Brittni to maintain the close

relationship they share with their father. The judge directed the parties to discontinue making derogatory remarks about each other in the presence of the children. In addition, family counseling was ordered.

Cheri appealed only the removal decision to the appellate court. As noted, the appellate court affirmed the circuit court's judgment.

## ANALYSIS

Cheri Mayer contends that the circuit court erred in denying her petition for removal of the children from Peoria, Illinois, to the Newton-Sparta area of New Jersey. The circuit court's award of sole custody of the children to Cheri has not been appealed from and is therefore not at issue in this appeal.

A petition for removal of children from the State of Illinois is governed by section 609(a) of the Illinois Marriage and Dissolution of Marriage Act, which states in relevant part:

"The court may grant leave, before or after judgment, to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of such child or children. The burden of proving that such removal is in the best interests of such child or children is on the party seeking the removal." 750 ILCS 5/609(a) (West 1992).

Accordingly, the paramount question in a removal case is whether the move is in the best interests of the children. *In re Marriage of Eckert*, 119 Ill. 2d 316, 325 (1988). The party seeking removal has the burden of proving it is in the children's best interests. *Eckert*, 119 Ill. 2d at 330.

"A determination of the best interests of the child[ren] cannot be reduced to a simple bright-line test, but rather must be made on a case-by-case basis, depending, to a great extent, upon the circumstances of each case." *Eckert*, 119 Ill. 2d at 326. A trial court should hear all relevant evidence in making this determination. *Eckert*,

119 Ill. 2d at 326. Some factors which a trial court should consider include: (1) the likelihood that the proposed move will enhance the general quality of life for both the custodial parent and the children; (2) the motives of the custodial parent in seeking the move; (3) the motives of the noncustodial parent in contesting the move; and (4) the visitation rights of the noncustodial parent. *Eckert*, 119 Ill. 2d at 327-28. These listed factors are not exclusive, and the weight to be given each factor will vary according to the facts of each case.

A trial court's determination of what is in the best interests of the children should not be reversed unless it is clearly against the manifest weight of the evidence and it has resulted in manifest injustice. *Eckert*, 119 Ill. 2d at 328. The presumption in favor of the trial court's ruling is strong and compelling because the trial court had significant opportunity to observe the parents and the children, thereby evaluating their temperaments, personalities, and capabilities. *Eckert*, 119 Ill. 2d at 330.

Cheri Mayer submits that the circuit court's decision denying her petition for removal is against the manifest weight of the evidence and is manifestly unjust. According to Cheri, a proper balancing of the *Eckert* factors reveals that it is in the children's best interests to move to New Jersey. Cheri points out that removal would allow the children to be raised in a traditional family setting with a mother and a stepfather, and would also remove them from the negative influences of Thomas and Laura Smith.

The trial judge in this case conducted a thorough hearing on whether removal was in Courtni's and Brittni's best interests. He heard extensive testimony from both sides, conducted an *in camera* interview of Courtni, and appointed a psychotherapist who performed psychological evaluations of all the parties and the children. The trial judge then issued a written opinion in which

he applied the *Eckert* guidelines to the facts before him and concluded that removal was not in the children's best interests. We cannot say that the trial judge's decision is against the manifest weight of the evidence.

In explaining his decision denying removal of the children from Peoria, the trial judge specifically found that removal to New Jersey would be severely detrimental to Courtni's mental health. This finding is supported by the evidence. Thomas Goossens, the court-appointed psychotherapist, testified that his evaluation of Courtni showed her to be very troubled. We need not detail the extent of Courtni's emotional problems as set forth by Goossens. We simply note Goossens' strong recommendation that all stress, pressure, and conflict be minimized in Courtni's life. In accordance with this recommendation, Goossens expressed concern regarding Cheri's plans to relocate the children to New Jersey. Goossens believed that such a change would prove to be too big of an adjustment for Courtni, given her emotional state. Goossens specifically stated that removal to New Jersey would adversely affect Courtni. Furthermore, Cheri's own expert witness, Dr. Elkun, found Courtni to be a troubled 11-year-old child. The trial judge was correct to place great weight on the harm that a move to New Jersey would cause to Courtni's mental health under the facts of this case. Where, as here, the evidence shows that a child will be severely damaged by removal as a result of the child's emotional problems, this is a factor which weighs heavily against allowing the removal.

The trial judge's findings as to the other *Eckert* guidelines are supported by the evidence as well. The first factor is the likelihood that the proposed move will enhance the general quality of life for both the custodial parent and the children. *Eckert*, 119 Ill. 2d at 326-27. Here, the trial judge wrote in his opinion that, although Cheri's life may be enhanced by moving to New Jersey,

where she could join her new husband, there had been no showing that the children's lives would be enhanced. Cheri asserts that the trial judge failed to consider the indirect benefits which would result to the children from the enhancement of her quality of life. See *In re Marriage of Pfeiffer*, 237 Ill. App. 3d 510, 514 (1992) (noting that a mother's establishment of a new and successful marriage relationship would enhance the mother's quality of life and in that way would indirectly enhance the child's quality of life). We are not persuaded that the trial judge failed to consider the indirect benefits which would result to the children from the enhancement of Cheri's life should removal be allowed. Rather, the judge found that, despite the indirect enhancement factor, Cheri had failed to show that an overall enhancement of the children's lives would result from the move. This finding was appropriate under the facts of this case. As noted above, the trial judge accepted Goossens' testimony that Courtni would be severely damaged by a move. The record also reveals that the Mayers have sufficient income to maintain two residences and, at the inception of their marriage, had planned to do so as part of a commuter-marriage arrangement. While remaining in Peoria, Cheri had already quit her job in order to devote her full energies to her children and new husband. The evidence further showed that the girls were very involved in school and community activities in Peoria. Although comparable schools and essentially the same activities were available to the girls in New Jersey, a move to New Jersey would require them to leave their familiar surroundings and establish new relationships with friends and community members. This would burden the children with stress and pressure, which is exactly what the court-appointed expert advised against because of Courtni's emotional state. Thus, considering all the evidence in this regard, we must reject Cheri's argument.

The second and third factors are the motives of the custodial parent in seeking the move and the motives of the noncustodial parent in contesting the move. We agree with the trial and appellate courts that the motives of the parties in seeking and resisting removal in this case were not improper.

The final *Eckert* factor to be considered is the visitation rights of the noncustodial parent, including (a) whether a reasonable visitation schedule can be reached if the move is allowed; and (b) if removal to a distant jurisdiction will substantially impair the noncustodial parent's involvement with the children, the harm to the children which may result. *Eckert*, 119 Ill. 2d at 327-28. In the case *sub judice*, the trial judge stated that visitation between Thomas and his daughters would be extremely difficult if the removal petition should be granted. This finding is supported by the record. A trip from Peoria to the Newton-Sparta area of New Jersey was shown to be too lengthy for weekend visits, as it consisted of a flight from Peoria to Chicago, Illinois; a connecting flight from Chicago, Illinois, to Newark, New Jersey; and then a substantial drive from Newark to the Newton-Sparta area of New Jersey. The evidence also showed that the girls were extremely close to their father and his new family, while the relationship between Courtni and her mother was strained. In these circumstances, the trial judge was correct to consider the harm that would result to Courtni if her relationship with her father was too substantially impaired by her removal to a distant state. Thus, this final *Eckert* factor supports the circuit court's decision as well.

## CONCLUSION

The circuit court's decision to deny Cheri Mayer's request for removal of the children is not against the manifest weight of the evidence. Cheri's arguments in effect request us to set aside the trial court's determina-

tion by reweighing the evidence. This is not the proper function of a court of review. Consequently, the judgment of the appellate court, affirming the judgment of the circuit court, is affirmed.

*Affirmed.*

JUSTICE HEIPLE took no part in the consideration or decision of this case.