*In re* MARRIAGE OF JUDY ELLIOTT, n/k/a Judy Duncalf, Petitioner-Appellant, and WILLIAM R. ELLIOTT, Respondent-Appellee.

Third District    No. 3—95—0716

Opinion filed May 17, 1996.

1062

Peter W. Church (argued), of Klockau, McCarthy, Ellison & Marquis, P.C., of Rock Island, for appellant.

C. Stephan Marsh (argued), of Ruud, Scovil, Neppl & Marsh, of Rock Island, for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

Appellant, Judy Elliott, n/k/a Judy Duncalf, filed two separate petitions requesting leave to remove her children to Ohio. See 750 ILCS 5/609(a) (West 1994). Following denial of the second petition, Judy filed a timely notice of appeal. After carefully reviewing the record, we affirm.

## I. Background

Judy and William Elliott (William) were married on October 6, 1984. They have two children, Courtney, born May 21, 1986, and Maggie, born April 25, 1988. On August 1, 1991, the parties were awarded a judgment of dissolution of marriage. Joint custody of the parties' two minor children was awarded, with Judy serving as the primary custodial parent. Except for Judy's sister, all of Judy's and William's immediate families live in the Quad City area. Courtney and Maggie have lived in the Quad City area their entire lives.

On December 20, 1994, Judy filed a petition to remove the children from Illinois to Ohio. On February 1, 1995, a hearing was held. Judy testified that she graduated from chiropractic school following her divorce. She was employed as a receptionist at her father's chiropractic office at a rate of $8 per hour. Judy took the exam to become licensed as a chiropractor in Iowa, but failed the bookkeeping portion of the test. Judy said that to become licensed as a chiropractor in Illinois there is no written test, but a fee is required. She said that she

could not afford the fee. Judy also acknowledged that she could retake the Iowa exam as many times as necessary to pass the test.

Judy further testified that she was licensed to practice as a chiropractor in Ohio. At the time of the first hearing, Judy had a job offer in Sterling, Ohio. The position paid $600 per week, and a bonus was available if she produced a certain level of business. Judy found a place to live in Ohio where the rent was $650 per month. At the time of the hearing, Judy and the girls lived in a house owned by her parents and paid no rent or child care expenses. Judy was engaged to William Pring. He lives in Ohio and is a licensed chiropractor in that state. Judy testified that they planned to marry as soon as possible.

William testified that he is employed as a dock worker for Roadway Express. He is a union member and has an irregular work schedule because he is on call. William was granted visitation with the children for two full weeks in the summer, two full days and nights every other week, one day during the week he does not have them overnight, and any other times agreed upon by Judy and William. Judy testified she did not preclude William from exercising additional visitation when his work schedule allowed. In addition, William's parents spend Thanksgiving and Christmas with Courtney and Maggie. William's mother sees Courtney every school day because she took a job in the cafeteria of Courtney's grade school. William's father also sees the girls very often. Judy's parents see the girls up to four times per week, and the girls regularly stay with them on Friday nights. It is undisputed that all four grandparents have a very close relationship with Courtney and Maggie and see the children frequently.

William testified that he is very close to both his daughters, especially Courtney. He is Courtney's basketball and softball coach and has encouraged Courtney and Maggie to become involved in a variety of other sports. In addition to his in-person visitation schedule, William and his daughters talk on the telephone several times per week. He follows the girls' progress at school and meets occasionally with their teachers. He testified that both girls were doing very well in school.

Courtney was interviewed *in camera* by the trial court and both attorneys. She said that she did not want to move to Ohio. She told her mother that she did not want to move and Judy responded by telling her "*too bad.*" (Emphasis added.) She testified that her mother was mean to her when they were in Ohio, and she did not like her mother's fiance or his parents. Courtney said that her mother's fiance used profanity in her presence, made fun of William, did not let the girls use William's name, yelled at her, and punished her when she made too much noise in the mornings.

On February 3, 1995, the trial court issued an opinion which denied the petition. The court applied the factors of *In re Marriage of Eckert*, 119 Ill. 2d 316, 518 N.E.2d 1041 (1988). The court specifically found: (1) Judy did not meet her burden to show that removal of the children to Ohio was in their best interests; (2) Judy would increase her income with a move to Ohio, but her expenses would also increase; (3) Judy could retake the Iowa chiropractic exam and become licensed to work with her father; (4) all of the children's relatives live in Illinois, including their father and both sets of grandparents; (5) the children's quality of life would not be enhanced by the move to Ohio; and (6) due to the distance, and William's irregular work schedule, no realistic or reasonable visitation schedule could be crafted which would preserve William's relationship with his children. On May 22, 1995, the court denied Judy's motion to reconsider.

On July 10, 1995, Judy filed a second petition for leave to remove. A second hearing was held on August 23, 1995. At this hearing, the parties stipulated that the transcript from the first hearing would be admitted as evidence. At the second hearing, Judy testified that she had a new job offer in Ohio, paying $850 per week, plus bonus possibilities. Judy's fiance had a job offer from the same chiropractic office. She and the children and her fiance would live in Strongville, Ohio, about 30 miles south of Cleveland.

At the second hearing, Judy proposed driving the children every other weekend from Ohio to Illinois to visit William. The trial court stated the proposal was "impractical and unreasonable." The court said the children will make friends in Ohio and become involved in weekend activities which would make the children reluctant to leave every other weekend. Also, William testified that his work schedule is erratic and he never knows if he will be off on the weekends. William typically has only one hour's notice before he must report to work to start his shift as a dock worker.

The trial court denied Judy's second petition on August 28, 1995. The court found her visitation proposal inadequate and unrealistic. The court also found the motives of each party to be sincere and proper. The court conceded that the move to Ohio would benefit Judy, and, indirectly, the children. However, the court concluded that removal of the children from William, both sets of grandparents, and the environment in which the girls had grown up would cause harm to the children which outweighed any potential benefit. The court finally concluded that Judy had not met her burden of proving that removal of the children was in their best interest. Judy filed a timely notice of appeal.

## II. Applicable Law and Standard of Review

The sole issue before us is whether the trial court's determination is against the manifest weight of the evidence.

■ Section 609 of the Illinois Marriage and Dissolution of Marriage Act (the Act) governs a custodial parent's right to remove a child or children from the state. 750 ILCS 5/609 (West 1994). The Illinois Supreme Court has interpreted the statute such that the paramount issue is whether the move is in the best interest of the child. *Eckert*, 119 Ill. 2d at 325, 518 N.E.2d at 1044. The burden of proving that removal is in the child's best interest lies with the party seeking removal. *Eckert*, 119 Ill. 2d at 325, 518 N.E.2d at 1044; 750 ILCS 5/609(a) (West 1994).

A reviewing court will not set aside a trial court's determination of what is in the best interest of the children unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred. *Eckert*, 119 Ill. 2d at 328, 518 N.E.2d at 1046. The standard of review is indicative of the fact that the decision to grant removal of a child from this state is a decision especially within the province of the trial court. *In re Marriage of Creedon*, 245 Ill. App. 3d 531, 536, 615 N.E.2d 19, 23 (1993).

■ In *Eckert*, our supreme court stated various factors which the trial court should consider in determining whether removal is in the best interest of the child: (1) the likelihood for an enhanced quality of life for the custodial parent and the child; (2) the motives of both parents; (3) the visitation rights of the noncustodial parent; and (4) whether a reasonable and realistic visitation schedule can be reached if the move is allowed. *Eckert*, 119 Ill. 2d at 326-27, 518 N.E.2d at 1045-46. A reasonable visitation schedule is one which fosters and preserves the relationship between the child and the noncustodial parent. *Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1046.

More recently, our supreme court's unanimous opinion in *In re Marriage of Smith*, 172 Ill. 2d 312 (1996), affirmed the *Eckert* principles. *Smith* also confirms the long-standing principle that "the paramount question in a removal case is whether the move is in the best interests of the children." *Smith*, 172 Ill. 2d at 320.

### III. Analysis

On appeal, Judy argues: (1) the trial court placed undue emphasis on the difficulty of establishing suitable visitation for William if she were allowed to take the children to Ohio; and (2) the trial court did not give enough weight to the direct benefits she would receive if she were allowed to move to Ohio.

In reviewing the record, we are mindful the law is clear that it is

*not* the function of a court of review to reweigh the evidence. *Smith*, 172 Ill. 2d at 324-25; *In re Marriage of Pfeiffer*, 237 Ill. App. 3d 510, 513, 604 N.E.2d 1069, 1071 (1992).

■ The trial court concluded, after analyzing the *Eckert* factors, that while Judy's quality of life would improve with a move to Ohio, any indirect benefit to Courtney and Maggie would not outweigh the negative impact the move would have on the girls. We agree. After reviewing the record, we find the trial court's conclusion is not against the manifest weight of the evidence.

The statute in question demands the primary focus must be on the best interests of the children. Any improvement of the custodial parent's lifestyle is important only to the extent the improvement benefits the children. The record reflects that both girls are well-adjusted and doing well in school. They have strong family and social ties to the Quad Cities area and are involved in a variety of extracurricular activities. They see both sets of grandparents very regularly and love them very much. In addition, Courtney indicated to her mother and told the trial court that she does not want to move to Ohio. She says the family environment in Ohio is less desirable than the family environment in the Quad Cities.

The trial court found that Judy's and William's motives were proper and sincere. Judy wants to pursue better job opportunities in Ohio and wants to marry a man who lives in Ohio. William loves the children and wants to be near them and nurture their development as they grow up. The record also supports these conclusions as consistent with the manifest weight of the evidence.

Next, we note that our courts have always recognized that it is in the best interest of the children to maintain a healthy and close relationship with both parents, as well as other family members. *Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1045. For this reason, we must carefully consider the visitation rights of the noncustodial parent. *Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1045. Towards this end, it is also vital that trial courts be guided by the stated purpose of the Act to "secure the maximum involvement and cooperation of *both parents* regarding the physical, mental, moral and emotional well-being of the children during and after the litigation." (Emphasis added.) 750 ILCS 5/102(7) (West 1994); see also *Eckert*, 119 Ill. 2d at 328, 518 N.E.2d at 1046. It is clear in this case that the trial court gave proper consideration to William's visitation rights.

Lastly, the ability of the trial court to fashion a reasonable visitation schedule is especially important "[w]hen a parent has assiduously exercised his or her visitation rights." *Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1046. The trial court determined that given the

distance from the Quad Cities to Strongville, Ohio, and William's erratic work schedule, no reasonable visitation arrangement was possible. We agree. It is undisputed that William has steadfastly exercised his visitation rights. He has been a constant and important figure in his daughters' lives, and he wants to continue to be a full-time father to his daughters. The record supports the trial court's findings.

As a result, we conclude the trial court did not abuse its discretion in finding that removal of the children to Ohio would severely limit William's visitation rights and prevent a reasonable visitation schedule from being implemented.

### IV. Conclusion

Following our review of the record and after applying the principles set forth in *Eckert*, we find the denial of Judy's petition to remove Courtney and Maggie is not against the manifest weight of the evidence. Accordingly, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

BRESLIN, P.J., and LYTTON, J., concur.