No.  2--03--1227 

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

In re
 MARRIAGE OF ) Appeal from the Circuit Court

SILVIA REPOND, ) of Du Page County.

)

Petitioner-Appellant, )

)

and ) No. 95--D--3377

)

JOSE REPOND, ) Honorable

) James J. Konetski,

Respondent-Appellee. ) Judge, Presiding.

JUSTICE HUTCHINSON delivered the opinion of the court:

Silvia Repond, petitioner and the custodial parent of the parties' three children, filed a petition for leave to remove the children from Illinois to Switzerland.  In September 2003, pursuant to an agreement between Silvia and respondent, Jose Repond, the trial court entered an order allowing the removal of the parties' oldest child, Olivier, to Switzerland.  In October 2003, following a hearing, the trial court denied the petition for removal of the parties' two younger sons, Laurent and Frederic.  On appeal, Silvia contends that the trial court's denial of her petition to remove was against the manifest weight of the evidence.  We reverse and remand.

The parties were married on February 20, 1986.  Three children were born to the marriage: Olivier, born February 25, 1986; Laurent, born January 1, 1988; and Frederic, born August 14, 1993.  The parties' marriage was dissolved on September 17, 1997.  The judgment of dissolution awarded Silvia sole custody of the children and granted Jose visitation one evening per week, alternating weekends, two weeks during the summer, and alternating major holidays.

On July 11, 2003, Silvia petitioned for leave to remove the parties' children to Morges, Switzerland.  In her petition, Silvia alleged that she was a physicist and had been employed at Fermilab Laboratories (Fermilab) until June 2003.  Since January 2003, when she was informed that her employment would terminate, Silvia had unsuccessfully applied for positions in the United States.  Silvia was offered several opportunities for employment in Switzerland.  Silvia alleged that moving to Switzerland would allow her to pursue her career and to provide the children with a good standard of living.

On August 24, 2003, pursuant to motions of the parties, the trial court appointed attorney Joseph Beck as the children's representative.  On August 27, 2003, the trial court appointed clinical psychologist Dr. George Hotchkiss to perform an evaluation of the parties and their children and to make a recommendation to the court on the removal petition.  On September 17, 2003, the parties agreed to the entry of an order allowing the removal of Olivier from Illinois to Switzerland.

During the first three days of October 2003, the trial court conducted a hearing on the petition to remove as it related to Laurent and Frederic.  At the hearing, Silvia testified that she, Laurent, and Frederic were residing in Wheaton at the home of friends.  She was not currently employed.  She had been employed as a research associate in high energy physics at Fermilab until June 2003.  Silvia testified that she looked for employment in the area but was not successful.  She married Jean-Phillipe Ansermet on June 21, 2003.  Silvia testified that Ansermet had previously been a professor at the University of Illinois in Champaign.  He attempted to extend his employment with the University but could not.  He currently resides in Morges, Switzerland, where he is employed as a professor of physics and as the director of the Institute of Physics.  Ansermet earns approximately $100,000 per year.  Silvia testified that the children were fond of Ansermet, and they enjoyed participating in activities as a family, including attending church, going to the movies, going to the park, and going out to eat.  Silvia also testified that during past visits to Switzerland, Ansermet taught the boys to sail.

Silvia testified that the area of Switzerland where Morges is located has a large international population because the United Nations and the International Center for Nuclear Research are located there.  Silvia testified that Laurent could attend an international high school near Morges that has a curriculum comparable to American high schools.  She testified that Olivier and Laurent have visited  the school and have talked to the dean.  The school offers advanced courses in math, biology, and computers.  The school also has an extracurricular chess group and a football program that coincide with Laurent's interests.  Olivier currently attends this high school.  Silvia testified that Frederic could be enrolled in the public elementary school in Morges.  Silvia spoke with the director of the school and learned that the school has a program for children from foreign countries.  The children are taught the same curriculum as schools in the United States, with a special teacher to help them transition from an English-speaking classroom to a French-speaking classroom.  Silvia testified that she and the children also found an evangelical church in Switzerland that is similar to the one they attend in Wheaton.

The home in which Silvia and the children would reside in Morges is owned by Ansermet's family.  It has seven bedrooms and each child would have his own bedroom.  The elementary school is about a 10-minute walk from the home, and the high school is a 25-minute train ride.  Silvia testified that both Laurent and Frederic could visit Jose for six weeks in the summer and one to two weeks during Christmas break.  She further testified that there would be two other school breaks during which they could visit Jose.  Silvia testified that Jose's parents, brother, and extended family live in Switzerland.  Jose's parents live two hours from Morges by train and his brother lives one hour by train.  Jose also has aunts and uncles who live approximately a half hour from Morges.  Silvia also noted that Jose frequently travels to Hamburg, Germany, for work.  Silvia testified that she intends to return to Illinois during Easter vacations to maintain contact with her friends.  She also testified that Ansermet has a daughter in Champaign, Illinois, with whom he visits regularly.

Dr. Hotchkiss testified that he spent approximately 12 hours interviewing the parties and their children.  He testified that Silvia was the primary caregiver of the children.  Dr. Hotchkiss testified that Frederic was generally positive about moving to Switzerland.  Frederic liked the mountains and the opportunities available in Switzerland but was nervous about learning to speak French.  Frederic seemed to view learning French as a challenge and stated that he would like to learn other languages as well.  Dr. Hotchkiss testified that Frederic had a close relationship with his mother and that she supported him in his academic and religious activities.

Dr. Hotchkiss testified that Laurent had negative feelings about the prospect of moving to Switzerland.  Laurent was anxious about leaving his friends and about having less opportunity to be with his father.  Dr. Hotchkiss testified that Silvia had agreed that Laurent could remain in Illinois if he resided with Jose.  However, Jose told Dr. Hotchkiss that his sons could not live with him.

Dr. Hotchkiss reported that Jose missed approximately one-half of his visitation opportunities in the past several years.  Laurent and Frederic told Dr. Hotchkiss that they enjoyed the time they spent with their father, although Laurent expressed frustration with the visits.  Laurent was frustrated because he did not feel welcome in his father's home and he had difficulty inviting friends to visit and participating in extracurricular activities when he was there.  Dr. Hotchkiss testified that all three boys do well academically and are involved in their church youth group.  All of the children expressed a fondness for Ansermet and felt that Ansermet was caring and interested in their lives.  Dr. Hotchkiss testified that keeping the children together was an important consideration in deciding where they should live.  Dr. Hotchkiss opined that the removal of the children to Switzerland was in their best interests.  Dr. Hotchkiss testified that Jose could maintain his relationship with the children if he was granted sufficient visitation.  Dr. Hotchkiss recommended a visit during the Christmas school holiday and a long visit during the summer.

Dr. Hotchkiss's 10-page written report detailing his findings and recommendations was admitted into evidence.  The report indicated that Jose is married and lives in Morris, Illinois.  Jose has a two-year-old son and his wife was expecting another child in March 2004.  Jose has been employed at the Argonne National Laboratory in Lemont for 18 years and his typical work hours were from 8:30 a.m. to 5 p.m.  Jose travels to Europe for business about four times per year.  These trips last from one to three weeks.  Jose's parents and his brother live in Switzerland.

Dr. Hotchkiss's report further reflected that communication between the parties was difficult.  Both Sylvia and Jose expressed complaints about each other in matters regarding the children.  The report indicated that Olivier strongly wished to relocate to Switzerland, and before the evaluation process was completed, the parties agreed to allow Olivier to move there to begin his senior year in high school.

Dr. Hotchkiss's report provided that the children have a limited "sense of home" established with their father.  The report reflected that, when asked to talk about his father, Frederic stated, "I don’t really know dad too well."  The report further reflected that Jose's wife frequently absents herself from contact and involvement with Olivier, Laurent, and Frederic.  Dr. Hotchkiss's written report concluded as follows:

"Based upon this evaluation, I am supporting the removal of all three children to Switzerland.  She [Silvia] has gone to great lengths to build a comfortable and loving home for her children in Switzerland.  She has also looked into and made educational arrangements for the children.  The children have a positive relationship with their stepfather.  In contrast they have a positive yet limited relationship with their father.  Visitation is not reliable.  Friends are not involved in visits.  It also appears that the children are not involved in visits for other reasons besides travel on Jose's part.  There is a hesitancy and protectiveness displayed by the father about keeping the conflict of the children out of his home."

Jose testified that he is a physicist with Argonne Laboratories.  He earns about $86,000 per year.  He lives in Morris with his wife, who was pregnant, and their two-year-old son.  Jose testified that Laurent and Frederic could not live with him.  When asked about his trips to Europe, Jose testified that he has to travel to Hamburg, Germany, three times a year.  Jose usually combines the trips with other meetings and conferences so he is in Europe for two to three weeks on those occasions.  He also testified to traveling to Europe for conferences or meetings at other times during the year.  Jose testified that, to visit his children in Switzerland, he would be required to extend his business trips a few days.  He further testified that he was hesitant to do this because he did not want to spend additional time away from his wife and their son.

At the close of evidence, attorney Beck, the children's representative, recommended that the trial court grant Silvia leave to remove the children.  However, he voiced concerns about the children's visitation with Jose and requested that the trial court attempt to maximize the quarterly periods of time in which Jose could visit with the children.

The trial court denied the petition for removal of Laurent and Frederic.  The trial court found that Silvia presented insufficient evidence that the children would have an enhanced quality of life in Switzerland as compared to where they currently reside.  The trial court further found that the parties would be unable to devise a reasonable and workable visitation schedule.  The trial court also expressed concern regarding the enforceability of a visitation order if the children were in Switzerland.  This timely appeal followed.

Silvia's sole contention on appeal is that the trial court's denial of her petition to remove was against the manifest weight of the evidence.  Silvia argues that the children's quality of life would be better in Switzerland because she was offered employment there, Ansermet is employed there, and the children's brother and relatives on both sides of the family live there.  Furthermore, Silvia argues that a reasonable visitation schedule is feasible considering that the children have four breaks from school during the year, she plans to return to Illinois over the Easter holiday, and Jose travels to Europe three or four times a year.  Silvia contends that the move to Switzerland is in the best interests of the children and that the trial court's order denying her petition should be reversed.

Section 609(a) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/609(a) (West 2002)), which governs requests for removal, provides in pertinent part:

"The court may grant leave *** to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of such child or children.  The burden of proving that such removal is in the best interests of such child or children is on the party seeking the removal."  750 ILCS 5/609(a) (West 2002).

The best interests of the child is the "paramount question" that must be considered in a removal action.  
In re Marriage of Eckert
, 119 Ill. 2d 316, 325 (1988).  The Illinois Supreme Court has cautioned that a best interests determination "cannot be reduced to a simple bright-line test," and that such a determination "must be made on a case-by-case basis, depending, to a great extent, upon the circumstances of each case."  
Eckert
, 119 Ill. 2d at 326.  The trial court's determination of what is in the best interests of the child should not be reversed unless it is clearly against the manifest weight of the evidence, and it appears that a manifest injustice has occurred.  
Eckert
, 119 Ill. 2d at 328.

At the outset, we note that a trial court should hear any and all relevant evidence.  
Eckert
, 119 Ill. 2d at 326.  Moreover, factors that a trial court should consider in determining whether a removal would be in the child's best interests include:  (1) the likelihood that the move would enhance the general quality of life for both the custodial parent and the child; (2) the custodial parent's motives in seeking the removal, to determine whether the removal is a ruse intending to defeat or frustrate visitation; (3) the noncustodial parent's motives in resisting the removal; (4) the removal's effect on the visitation rights of the noncustodial parent; and (5) whether a realistic and reasonable visitation schedule can be created if the move is allowed.  
Eckert
, 119 Ill. 2d at 326-27.  These factors, however, are "not exclusive, and the weight to be given each factor will vary according to the facts of each case."  
In re Marriage of Smith
, 172 Ill. 2d 312, 321 (1996).  The purpose of the 
Eckert
 factors is "not to establish a test" but, rather, they are "to be considered and balanced by the circuit court in arriving at a best interests determination."  
In re Marriage of Collingbourne
, 204 Ill. 2d 498, 523 (2003).

After reviewing the record, we hold that the trial court's determination that removal to Switzerland was not in the best interests of the children was against the manifest weight of the evidence.  The evidence clearly demonstrated that the proposed move would enhance the general quality of life for both Silvia and the children.  See 
Eckert
, 119 Ill. 2d at 326-27.  At the time of the hearing, Silvia was unemployed and living with her children at the home of friends.  Silvia's move to Switzerland with Ansermet would provide her with a comfortable home, economic security, and a partner to help rear her children.  See 
Collingbourne
, 204 Ill. 2d at 526 (noting the nexus between the quality of life of the custodial parent, who has the burden and responsibility of child rearing, and the quality of life of the child that is in the parent's care).  Silvia and Dr. Hotchkiss testified that the children were fond of their stepfather and that Ansermet enjoyed doing things with the children and took an interest in their lives.  Permitting Laurent and Frederic to move to Switzerland would also allow all three children to live together in their own home and be close to extended family on all sides.  See 
Collingbourne
, 204 Ill. 2d at 529 (noting that the social environment of a traditional family setting is an important benefit to a child).  Additionally, the move would allow Silvia to secure employment and continue her career.  The children would be afforded educational and cultural opportunities.  We also note that both Dr. Hotchkiss and attorney Beck concluded that permitting the removal was in the children's best interests.

We reject Jose's argument that the move to Switzerland was ill-prepared and that Silvia was planning to send Frederic to a French-speaking school, without any effort to facilitate his integration.  As detailed above, Silvia fully researched and prepared for the children's removal to Switzerland.  She visited the schools they would attend and the church the family would join.  Silvia testified that Frederic would attend a special program in the public school that would allow him to learn in English until he is ready to transition to a regular French-speaking classroom.  Additionally, the high school Laurent would attend offers a curriculum comparable to that of his current high school in Illinois.  Dr. Hotchkiss reported in his evaluation that Silvia "has gone to great lengths to build a comfortable and loving home for her children in Switzerland."

We also reject Jose's claim that the children should not be removed to Switzerland because of Silvia's "erratic, moody" behavior and because the children would not have a support system in Switzerland.  In making this claim, Jose mischaracterizes the evidence given by Dr. Hotchkiss.  Although Dr. Hotchkiss reported some conflicts between Silvia and the children, he nonetheless found that it was in the children's best interests to live with Silvia in Switzerland.  Dr. Hotchkiss testified that it is very stressful and challenging for a mother to rear three boys, two of whom are teenagers.  Silvia also agreed to attend counseling with the children in Switzerland, as recommended by Dr. Hotchkiss.

Lastly, Jose claims that Laurent and Frederic were "entirely opposed" to the move.  The evidence presented at the hearing was that Frederic was generally positive about the move, though he was nervous about learning to speak French.  The record reveals that Laurent told Dr. Hotchkiss and his mother that he wanted to remain in the United States and live with Jose; however, Jose refused to allow Laurent to live with him.  See, 
e.g.
, 
Collingbourne
, 204 Ill. 2d at 534 (noting that a child's opposition to moving is a natural response and not sufficient to justify the denial of a petition to remove).  Based on the foregoing, we find that the move to Switzerland would enhance the general quality of life for Silvia and the children.

The second and third 
Eckert
 factors require the trial court to assess the custodial parent's motive in seeking the removal and the noncustodial parent's motive in contesting the removal.  
Eckert
, 119 Ill. 2d at 327.  The record reveals that Silvia had a valid motive for seeking to remove her two sons to Switzerland.  As set forth above, both Silvia and Ansermet found employment in Switzerland, and Olivier already lives in Switzerland.  The record contains no indication that Silvia's request to remove was an attempt to defeat visitation.  Indeed, Silvia consented to Laurent remaining in Illinois and residing with Jose.  In regard to Jose's motives in contesting removal, we find no evidence that he was not acting out of a genuine concern to maintain his relationship with his children.  However, we note that Jose's concern for the relationship fell short of allowing Laurent to reside in his home.  We therefore conclude that neither the second nor third 
Eckert
 factor weighs against either party.

The fourth and fifth 
Eckert
 factors require a consideration of the effect that removal would have on the noncustodial parent's visitation rights.  
Eckert
, 119 Ill. 2d at 327.  A child has an interest in maintaining significant contact with both parents following a dissolution.  
In re Marriage of Krivi
, 283 Ill. App. 3d 772, 777 (1996).  It is in the best interests of the child to have a healthy and close relationship with both parents, as well as other family members.  
Eckert
, 119 Ill. 2d at 327.  When the removal to a distant jurisdiction impairs the noncustodial parent's involvement with the child, the potential harm to the child should be assessed.  
Eckert
, 119 Ill. 2d at 327.

We agree with the trial court that the children's removal to Switzerland would have an impact upon visitation.  However, removal will always have some impact on visitation; the pivotal question is whether a reasonable visitation schedule can be created.  
Collingbourne
, 204 Ill. 2d at 532.  Silvia testified that the Swiss schools are set up on a quarterly basis and that the boys could see their father for six weeks in the summer, for one to two weeks over Christmas break, and during two other school breaks.  Silvia also testified that she planned on returning to Illinois during Easter break, and she could bring the children with her at that time.  Dr. Hotchkiss reported that a lengthy visit with Jose in the summer and a visit in December would maintain the children's relationship with their father.  Dr. Hotchkiss also suggested that the boys could maintain contact with Jose on a day-to-day basis through e-mail.  At the hearing, the parties also testified regarding the possibility of Jose visiting the boys on his business trips to Europe.  Although Jose testified that he did not want to extend his European trips, it may be necessary for him to put forth some effort if he wishes to maintain a close relationship with his sons.  See 
In re Marriage of Ludwinski
, 312 Ill. App. 3d 495, 504-05 (2000).

In examining the visitation factor, we must also consider the degree to which Jose has exercised his visitation in the past.  See 
Eckert
, 119 Ill. 2d at 327-28.  In this case, the record reveals that Jose failed to take advantage of half of his scheduled visitation with Laurent and Frederic in the past several years.  Dr. Hotchkiss reported that, although the boys enjoy the time they spend with their father, they have a limited sense of "home" established with him.  Jose does not regularly observe the children's extracurricular activities.  He makes it difficult for them to participate in activities when they are visiting him, and their friends are not welcome in his home.  Jose is hesitant to make the children a part of his life outside of the time he actually visits with them.  The visitation schedule proposed by Silvia is reasonable in light of Jose's relationship with the children.  We note that, if Jose takes advantage of visitation during the quarterly school breaks as proposed by Silvia, he will actually have the children for more time than he has in the past several years.  See 
Collingbourne
, 204 Ill. 2d at 533-34 (stating that a longer uninterrupted period of visitation time may foster a more meaningful relationship between parent and child).

In considering visitation, we also note that the parties had some disagreement in the past as to the scheduling of visitation.  Indeed, the trial court expressed concern about the manner in which the 2002 Christmas visitation and the 2003 summer visitation took place.  After reviewing the record, we find no reason to believe that Silvia would not comply with court-ordered visitation such that outright denial of the removal petition was warranted.  Silvia's willingness to allow Laurent to reside with Jose indicates her understanding of the importance of their relationship.  As we are presented with intelligent children and two intelligent parents who love them, we are confident that a reasonable visitation schedule can be established to preserve the father's relationship with the children.  See 
In re Marriage of Parr
, 345 Ill. App. 3d 371, 379 (2003).  Furthermore, we assume that Silvia will provide the children the opportunity to spend time with their paternal extended family members who live close to them in Switzerland.

In weighing all of the relevant factors, we recognize that the paramount question is what is in the best interests of the children.  
Eckert
, 119 Ill. 2d at 325.  The record reflects that Jose wants his sons to remain in Illinois but he refuses to allow them to live in his home.  Jose has limited his interaction with his sons to the scheduled visitation and he has exercised only half of the available visitation over the past several years.  In contrast, Silvia has had sole custody of the children since the parties' divorce in 1997.  She has been the primary caregiver and supporter of the children.  She has a valid and reasonable desire to remove her sons to Switzerland.  Silvia has gone to great lengths to ensure that the needs and interests of her children will be met in Switzerland and has set up a loving and comfortable home for them.  Extended family on both sides reside in Switzerland.  Although visitation will be impacted by the move, we nonetheless believe that a reasonable visitation schedule can be created and the children can maintain regular contact with their father.  Any adverse impact on visitation will be outweighed by the enhanced quality of life awaiting the children in Switzerland.  Viewing the evidence in its entirety, we hold that the trial court's denial of the petition to remove was clearly against the manifest weight of the evidence.

We recognize that in 
In re Marriage of Stahl
, No. 2--03--1071 (May 19, 2004), this court recently considered a trial court's denial of a mother's petition to remove her children from Illinois to Wisconsin.  On review, the 
Stahl
 majority applied the five factors identified in 
Eckert
 and affirmed.  
Stahl
, slip op. at 13-15.  It is not clear from the opinion whether the trial court was aware of 
Collingbourne
 and applied the five factors in the context of 
Collingbourne
.  The majority in 
Stahl
 affirmed the judgment by stating:

"Here, we do not believe that the trial court considered only the direct benefits the children would incur if Lisa's removal petition was granted.  Rather, the record reveals that the trial court considered all of the possible benefits to the children and determined that there was 'no substantial evidence of enhancement in the quality of the lives of the children either directly or indirectly.'  As such, Lisa's contention is without merit."  
Stahl
, slip op. at 16.

The majority did not reconcile the 
Collingbourne
 perspective and the trial court's finding wherein the trial court stated:

"The court does not believe that either party has impure motives, but does believe, based upon the evidence, that they have each been spurred on in this litigation by a desire to improve his or her own life, rather than by an objective view of the best interests of the minor children."  
Stahl
, slip op. at 12.

The majority opinion did  not address the apparent conflict between 
Collingbourne
, which notes the interrelationship between the quality of life of the custodial parent and the quality of life of the child, and the trial court's finding that there was no substantial evidence of indirect enhancement in the quality of the lives of the children.  We believe that the majority analysis in 
Stahl
 sufficiently addressed neither the contextual changes 
Collingbourne
 imposed upon the factors set forth in 
Eckert
 nor the apparent inconsistencies between the finding of the trial court and the new perspective on benefits set forth in 
Collingbourne
.  To the extent that our decision in the present case represents a conflict of application or interpretation of authority within this court, we resolve this conflict by explaining our rationale of review.  See 166 Ill. 2d R. 23(a)(2).

We began our review in the present case with 
Eckert
, in which our supreme court addressed the issue of a custodial parent's right to remove a child to another state.  See 
Eckert
, 119 Ill. 2d 316.  In determining what is in the best interests of a child, the 
Eckert
 court stated at the outset that the trial court should hear any and all relevant evidence.  
Eckert
, 119 Ill. 2d at 326.  It then provided guidance to trial courts by suggesting five factors to assist the trial court in arriving at its decision.  
Eckert
, 119 Ill. 2d at 326-27.  We next reviewed 
Smith
, 172 Ill. 2d 312, in which our supreme court revisited the removal issue.  In its analysis, the 
Smith
 court reiterated the suggestions, or factors, previously set out in 
Eckert
, but also emphasized that the factors were "not exclusive," and that "the weight to be given each factor will vary according to the facts of each case."  
Smith
, 172 Ill. 2d at 321.  Finally, we reviewed 
Collingbourne
, 204 Ill. 2d 498, the most recent of our supreme court cases dealing with the issue of removal.  The 
Collingbourne
 court explained that the purpose of the 
Eckert
 factors was "not to establish a test" but, rather, that they were "to be considered and balanced by the circuit court in arriving at a best interests determination."  
Collingbourne
, 204 Ill. 2d at 523.  The 
Collingbourne
 court further expounded on the first 
Eckert
 factor, regarding the enhancement in the quality of life for both the custodial parent and the child, clearly providing guidance for trial courts in future removal cases.  See 
Collingbourne
, 204 Ill. 2d at 524-30.

The purpose of a published opinion is to develop and maintain a coherent body of law.  
Siegel v. Levy Organization Development Co.
, 153 Ill. 2d 534, 544 (1992).  To this end, it is imperative that a reviewing court set forth a rationale, discussing relevant case law pertaining to the issues.  
Siegel
, 153 Ill. 2d at 544-45.  Although we recognize that removal requests must be decided on a case-by-case basis (
Eckert
, 119 Ill. 2d at 326), we believe that our consideration here of the entire body of supreme court precedent pertaining to removal is more thorough than that presented in 
Stahl
.  We believe that this published opinion will provide future guidance to trial courts and parties in this sensitive area of removal.

For the foregoing reasons, we reverse the judgment of the circuit court of Du Page County.  We remand the cause to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

McLAREN and GROMETER, JJ., concur.