No. 3--05--0749

filed July 7, 2006.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

| | | |
|---|---|---|
| In re MARRIAGE OF | ) | Appeal from the Circuit Court |
| KEITH HANSEL, | ) | of the 12th Judicial Circuit, |
| | ) | Will County Illinois. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 02--D--1816 |
| | ) | |
| KRISTINA R. HANSEL, | ) | Honorable |
| n/k/a KRISTINA R. KUKSTA | ) | Robert J. Baron, |
| Defendant-Appellant.) | | Judge, Presiding. |

JUSTICE HOLDRIDGE delivered the opinion of the Court:

The defendant, Kristina Hansel, n/k/a Kristina Kuksta, appeals from the October 12, 2005, order of the circuit court of Will County denying her petition to remove the parties' minor child, Ciara Hansel, to North Carolina. On appeal, Kristina argues that the trial court's denial of her removal petition was against the manifest weight of the evidence. We affirm.

The parties were married in 1994. Ciara, the parties' only child, was born on January 27, 1996. The parties were divorced on February 28, 2001. The judgment for dissolution incorporated a joint parenting agreement which provided joint custody. Ciara resided with Kristina, while Keith had liberal and extensive visitation.

On May 18, 2005, Kristina petitioned for leave to remove Ciara to North Carolina. At the time the petition was filed, Ciara was 9

years old. In her petition, she alleged that her intended husband, John Corry, lived in North Carolina where he operated several business enterprises. Kristina alleged that she wished to move to North Carolina after her marriage to John and that moving Ciara with her was in the best interest of Ciara.

The trial court conducted a hearing on Kristina's petition on eight days between September 21, 2005, and October 12, 2005. Kristina testified that if the requested removal were allowed, she would be able to not work and thus devote more quality time to Ciara. Kristina testified that she currently was employed as a Catholic school teacher at St. Alphonsus in Lemont, Illinois. Ciara attended school at St. Alphonsus. Kristina's work required her to be at school 50-60 hours per week. Kristina's work schedule required Ciara to arrive at school at 6:30 a.m. and stay until 4:30 p.m. along with Kristina. One night per week, Kristina worked late while Ciara had visitation with Keith. Kristina also worked weekends, often times Ciara would accompany Kristina to work on Saturdays.

Kristina earned approximately $25,000 per year. Due to John's income level, Kristina would not have to work, thus not only giving her more time for Ciara, but also increasing family income, which Kristina claimed was also a benefit to Ciara. The record indicates that Keith pays approximately $27,000 per year in child support for Ciara.

Kristina also testified that a move to North Carolina would provide Ciara with more opportunities for her to interact with

friends and engage in extra-curricular activities, things that she could not do currently due to the fact that she had to spend so much time at school while her mother worked. Kristina also testified that, in her opinion, the school Ciara would attend in North Carolina, St. Mark's elementary, had more to offer and was better than St. Alphonsus.

Keith testified that after his divorce from Kristina, he moved to an apartment only one mile from Kristina and Ciara, so that he could be close to Ciara. The parties' dissolution agreement gave Keith visitation with Ciara every other weekend from Friday until Monday morning, as well as overnight visitation on alternating Thursday nights. Additionally, he would also have a minimum of another four hours of visitation weekly. Keith also had two weeks visitation each summer. He exercised all of his visitation.

In addition to the scheduled visitation, the record established that Keith had extensive contacts with Ciara, attending extracurricular events, school events, sporting events, etc. According to Keith, he is very involved in Ciara's school and extracurricular activities.

Dr. Roger Hatcher, a clinical psychologist retained by Keith, was ordered by the court pursuant to section 604.5 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/604.5 (West 200)(IMDMA)), to evaluate whether removal would be in the best interest of Ciara. Dr. Hatcher testified that he met with Kristina and Keith on eight separate occasions and with Ciara on two occasions. He administered various tests to all three. Based on

the meetings and the test results, Dr. Hatcher prepared a twelve-page report recommending that Ciara not be removed to North Carolina, noting that the proposed separation from Keith would actually harm Ciara.

Dr. Hatcher testified that the proposed move would actually harm Ciara in that it would reduce significantly the involvement of her father in her life. Dr. Hatcher pointed out that research showed to his satisfaction that adolescent girls whose fathers are relatively absent from their lives have greater social problems than girls with fathers active in their lives. Dr. Hatcher also commented that Ciara had a close relationship to her extended family, all of which resided in the area. Dr. Hatcher indicated an especially close relationship with Ciara's grandparents and great grandmother. His expert opinion was not refuted by other expert testimony.

Following the hearing, the trial court denied Kristina's petition for removal. In making its removal determination, the trial court considered, among other factors, whether allowing removal would enhance the general quality of life for Ciara. The trial court found that removal would not enhance Ciara's quality of life. Pointing to Keith's extensive visitation and contacts with Ciara, her contacts with family members, and Dr. Hatcher's opinion as primary factors, the trial court found that removal would provide little enhancement.

Kristina argues on appeal that the trial court's decision to deny her petition for removal was against the manifest weight of

the evidence.  Section 609 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/609 (West 2002)) governs requests for removal.  That section provides:

> "The court may grant leave *** to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of such child or children.  The burden of proving that such removal is in the best interests of such child or children is on the party seeking removal."  750 ILCS 5/609(a) (West 2002).

As explained by our supreme court in People v. Eckert, 119 Ill. 2d 316, 325 (1988), the paramount question in a removal action is whether the move is in the best interests of the child.  A determination of a child's best interests can often be difficult for a trial court to make.  Such a determination cannot be reduced to a simple bright-line test but, rather, must be made on a case-by-case basis, depending upon the circumstances of each case. Eckert, 119 Ill. 2d at 326.  A trial court's determination of what is in a child's best interests should not be reversed unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred.  Eckert, 119 Ill. 2d at 328.

A trial court should hear any and all relevant evidence before

making its determination, keeping in mind five salient factors. Eckert, 119 Ill. 2d at 326. Those factors are (1) whether the proposed move will enhance the quality of life for both the custodial parent and the child; (2) the custodial parent's motives in seeking the removal and whether the proposed move is merely a ruse intended to defeat or frustrate visitation; (3) the noncustodial parent's motives in resisting the removal; (4) the proposed move's likely effect on the noncustodial parent's visitation rights; and (5) whether a realistic and reasonable visitation schedule for the noncustodial parent can be worked out. Eckert, 119 Ill. 2d at 326-27. However, these factors are not exclusive. In re Marriage of Collingbourne, 204 Ill. 2d 498, 523 (2003); In re Marriage of Smith, 172 Ill. 2d 312, 321 (1996). Moreover, no individual factor is controlling and the weight accorded each factor will vary according to the facts of each case. Collingbourne, 204 Ill. 2d at 523; Smith, 172 Ill. 2d at 321.

Applying the above principles to the present case, we cannot say that the trial court's denial of Kristina's petition for removal was against the manifest weight of the evidence. The trial court found that the first Eckert factor weighed against removal. Under the deferential standard of review, we find no error. It is clear that Kristina's life would be enhanced if she were allowed to move to North Carolina with Ciara, i.e., the move would allow her to spend more time with Ciara, and the move would be financially beneficial. It is also clear that these benefits to Kristina would, in turn, also benefit Ciara. However, by moving to North

Carolina, Ciara would be leaving much behind, most notably her close relationship with her father and, to a lesser extent, her extended family. Moreover, it does not appear that there was any evidence that Ciara's school or extracurricular opportunities would be better in North Carolina.

The second and third Eckert factors were of no relevance in this particular case. The trial court made a special effort to note that both parties had the purest of motives in seeking and opposing removal. In fact the court noted that it was quite impressed with the parties's cooperation in parenting Ciara since the divorce.

The fourth and fifth Eckert factors weighed against removal. As to the fourth factor, removing Ciara to North Carolina would drastically affect Keith's visitation. Ciara currently has quite extensive visitation and contact with Keith. The trial court found that these visits and contacts were nurturing and invaluable to Ciara. The current visitation schedule and frequent contacts obviously could not be maintained if Ciara was allowed to move to North Carolina. A removal to North Carolina would instead require Keith and Ciara to visit very differently, much less frequently, and in bigger blocks of time. We cannot say that the trial court's determination was against the manifest weight of the evidence.

The fifth Eckert factor also weighed against removal. Kristina did propose a visitation schedule for Keith in the event removal was allowed. This schedule included the majority of the summer, several weekends during the school year, and alternating

holiday breaks. However, while this visitation schedule was "fair" it did not approximate the number of contacts Keith currently had with Ciara. Again, we cannot say that the trial court's finding was against the manifest weight of the evidence.

After carefully considering all of the above factors, the trial court denied Kristina's request to remove Ciara to North Carolina. Under the circumstances, with the majority of the factors weighing against removal, we find that the trial court's determination was not against the manifest weight of the evidence.

Kristina also raises an issue concerning the trial court's decision to allow Keith to amend two of his answers to her petition to remove Ciara. One response addressed Kristina's allegation (Paragraph 7 (t) of her petition) that she had been the primary caregiver since birth. The second concerned Kristina's allegation that she would provide Keith with a visitation schedule comparable, post removal, to what he currently has. We find no reversible error. A trial court is given broad discretion in deciding to allow amendment of pleadings. Healy v. Bearco Management, Inc., 216 Ill. App. 3d 945 (1991). In the instant matter, the amended answers contained no new theories or issues, nor does it appear to us that Keith's answers impacted the trial court's ultimate decision to deny the petition to remove Ciara. We see no abuse of discretion in allowing Keith to amend his answers. Kristina lastly maintains that the trial court erred in considering certain points in Dr. Hatcher's testimony. Specifically, Dr. Hatcher testified that Kristina told him that if she had to, she could remain in

Illinois after her marriage to John; apparently John was willing to sell his house in North Carolina and move to the Joliet area. Kristina argues that Dr. Hatcher misunderstood her comments. As this testimony was not referenced in the trial court's decision, it is clear that this statement did not have any impact on the decision of the trial court.

For the foregoing reasons, the decision of the circuit court of Will County is affirmed.

Affirmed.

LYTTON and BARRY, JJ., concur.